Argued May 17, affirmed June 15, 1972

McCURDY, *Appellant, v.* ALBERTINA KERR
HOMES, INC. ET AL (No. 371-014),
*Respondents.*
498 P2d 392

J. V. *McGoodwin*, Legal Aid Service, Portland, argued the cause and filed the brief for appellant.

*George R. Waldum*, Portland, argued the cause and filed the brief for respondents Albertina Kerr Homes, Inc., Fred A. Hutchinson and Doris D. Shafford.

*Fred A. Granata*, Portland, argued the cause and filed the brief for respondents John Doe and Jane Doe.

Before LANGTRY, Presiding Judge, and FOLEY and FORT, Judges.

FOLEY, J.

This is an appeal from a proceeding in habeas corpus in which the trial court found that plaintiff was not entitled to revoke her release for adoption and obtain custody of her child.[1] The sole issue is whether ORS 418.270(5) prevented the mother from revoking her consent. Plaintiff contends that the statute is invalid under the due process and equal

---

[1] Plaintiff is the mother of the child and was 18 years old at the time of its birth. The father is unknown to the court.

protection clauses. In the alternative, if this court should find the statute valid, she alleges that her consent was obtained by duress.

ORS 418.270(5) was enacted by the 1971 Legislature and became effective during the period of time when the events in this case were occurring. It provides:

"No agreement to release or surrender a child for adoption, or other agreement or waiver of rights having the same effect, executed before March 24, 1971, in connection with the surrender of a child into the guardianship of a child-caring agency for purposes of adoption, may be revoked or held invalid for any reason except upon affirmative proof of fraud or duress."

On March 19, 1971, plaintiff signed a release which expressly stated that it was given for the purpose of adoption of her child. At the same time, as part of the same transaction, she signed a waiver of notice of adoption proceedings.

On March 24, 1971, the governor signed the legislative Act amending ORS 418.270, of which subsection (5) was a part. The new law set forth above took effect immediately.

On March 31, 1971, the agency placed the baby with its prospective adoptive parents.

On April 8, 1971, the agency received a letter from plaintiff withdrawing her consent.

When plaintiff executed the release on March 19, she had the power under the law as it then existed to withdraw her consent during the succeeding six months, subject to principles of estoppel. The fact that she simultaneously executed a waiver of notice did not

prevent revocation under the decision of *Strobel v. Garrison*, 255 Or 16, 21, 459 P2d 1001, 464 P2d 688 (1970), in which the Oregon Supreme Court interpreted the then existing statute as allowing a six-month period for reconsideration in the absence of a "subsequent" waiver.

The 1971 Oregon Legislature, concerned with the uncertainty that it felt attended adoptive placement by private agencies under *Strobel,* decided to narrow the circumstances under which a parent could revoke consent. Minutes, Senate Judiciary Committee, Feb. 8, 17, Mar. 24, 1971; Minutes, House Judiciary Committee, Mar. 16, 1971. It therefore amended the existing statute so that future releases would be irrevocable if certain documents had been signed and the child had been placed for adoption. ORS 418.270(5) applied to releases executed prior to the effective date of the legislation, which was plaintiff's situation, and changed plaintiff's ability to revoke her consent at will (subject to estoppel) to an ability to revoke only upon affirmative proof of fraud or duress. It is this retroactivity which plaintiff alleges as a deprivation of due process.

■ At the outset it must be noted that the right of a parent to raise his child has constitutional protection and can be taken away only when the requirements of due process have been observed. *See Stanley v. Illinois,* 405 US 645, 92 S Ct 1208, 31 L Ed 2d 551 (1972).

■■ But parental rights also can be waived by the parent. This power to waive forms the basis of adoption statutes since adoption, unknown to the common law, exists only by virtue of enabling legislation.

■ Once the parent has validly waived his relationship with his child, the legislature can decide whether,

or under what circumstances, he can revoke that waiver. While plaintiff does not contend that the legislature cannot allow her to waive her relationship, she contends that it could not change the law which governed her right to revoke that waiver. Such a right, however, which can be considered as a grace period restricted in time to revoke a valid waiver, cannot be considered a vested right immune from legislative action. We note that the legislature did not abrogate plaintiff's existing right to have notice of the adoption proceedings and to come into court for the purpose of revoking the release on the more limited grounds of fraud or duress.

Plaintiff's equal protection challenge alleges that legislature has created unconstitutional categories by forbidding parents who deal with adoption agencies from revoking their consent except for fraud or duress while parents in private adoption situations can revoke unless they are estopped. *Dugger et ux v. Lauless,* 216 Or 188, 338 P2d 660 (1959). Plaintiff has not pointed to any legislative history which shows an intent to create such disparity. The very nature of the adoption agency, which is closely supervised by the state and has been given power to place children with adoptive parents, indicates a legislative policy to provide homes for children in a manner which promotes the well-being of the child and his prospects for successful integration into a family unit. As distinguished from private arrangements, adoption agencies can perform pre-placement evaluation of the home, the child and the prospective parents; provide interim care for the child; and act as an intermediary to preserve the anonymity of the parties. *See,* M. Embick, *The "In Blank" Consent and the Independent Adoption: A Defense,* 5 Will L J 50 (1968).

In contrast, private adoption arrangements are more likely to involve principles of estoppel and can arise out of a myriad of fact situations, beyond the ability of the legislature to foresee. Compare, e.g., *Smith v. Green,* 4 Or App 533, 480 P2d 437 (1971) (out-of-state contract) and *Dugger et ux v. Lawless,* supra (consent for a limited purpose).

The legislative decision to limit revocation when a parent has given his consent to an adoption agency does not appear to be an unreasonable solution to the problem of providing as much stability as possible to the child's environment since adoption agencies are licensed by the state and subject to state supervision. A classification which does not solve an entire problem does not violate the equal protection clause as long as there is a rational basis for the lines which are drawn. *See Edwards v. State Military Dept.,* 8 Or App 620, 623-26, 494 P2d 891, Sup Ct *review denied* (1972).

Plaintiff's remaining assignment is that her consent was obtained by duress. The trial court found that plaintiff signed the release for adoption "* * * freely and voluntarily and not under fraud or duress * * *." We agree. Plaintiff testified that she had been considering giving up the child for adoption for about a month before she went to the adoption agency. Although her father made the appointment with the agency, she initiated the events which led up to that visit by asking her father for his help and telling him she wanted to give up the child. On the day of her appointment and before she went to the agency, she wrote a letter to a friend in which she said that she had decided to give up the child so that he could have a better life. She read the documents before she signed them and corrected an error in the child's birthdate on the release.

Plaintiff alleges that the stress of financial and emotional problems left her no alternative. She appears to have tried valiantly to attend school, hold a job, and care for the baby. Certainly her circumstances, many of which may have been beyond her control, convinced her that she should give up the child; but there is no evidence that anyone influenced her to follow the course of action which she chose.

Affirmed.