Argued and submitted March 29, affirmed August 25,
appellants' and respondent's reconsiderations denied September 29,
petitions for review denied October 19, 1982 (293 Or 653)

In the Matter of Baby Boy Myers,
A child.

## STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

MYERS et al,
*Appellants.*

(No. 72,994, CA A21476)

650 P2d 113

Phillip M. Margolin, Portland, argued the cause and filed the brief for appellant Jo-Ann Myers.

Jenny M. Cooke, Portland, argued the cause and filed the brief for appellant Joseph Myers.

Daryl Dodson Wilson, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief was Dave Frohnmayer, Attorney General, Stanton F. Long, Deputy Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Both parents appeal an order of the circuit court terminating their rights to their infant son, contending they were denied due process by the court's remarks during the hearing. Father also contends that the judge who heard the pretrial matters erred in failing to appoint an attorney to represent him and in entering into *ex parte* communications with counsel for the state and for mother in chambers. We affirm.

The child who is the subject of this proceeding was born on April 16, 1981, while mother was a patient at Dammasch State Hospital. Both parties were admitted to the hospital after a motel owner reported to police that they were secluding themselves in a motel room and disturbing other people. Father was discharged within a few days; mother was committed. Both parents had spent time in mental health care facilities in California before coming to Oregon. Reports from California indicate that father was diagnosed as being paranoid schizophrenic. At Dammasch, mother was diagnosed as having a thought disorder and delusional thinking, paranoid in nature. She had been diagnosed in California as having undifferentiated schizophrenia. An order was obtained on April 17, 1981, placing the infant in the temporary custody of the Children's Services Division (CSD), and the child was placed in foster care. A petition for termination was filed on May 14, 1981.

In pretrial proceedings, the state sought psychiatric examinations of both parents. At that time, the court informed father that counsel would be appointed to represent him if he desired counsel and that an attorney might be able to present his case in a more effective manner than he could do for himself. Father indicated that he did not want an attorney at that time, but that he understood that if he wished to retain counsel at a later time he would be allowed to do so. The court agreed that he would be allowed to do that. The court explained to father that he would not receive any special treatment because he was representing himself and had no legal training. Father indicated that he understood.

The judge who heard the pretrial motions indicated that he would not hear the trial, because certain evidence

was considered at the pretrial hearing that might not be admissible at the trial on the merits. After ruling on the motions before it, the court met with counsel for the state and counsel for mother in chambers without mother and father present. The court asked counsel for mother to encourage father to get a lawyer to represent him. The court expressed concern about the trial:

> "It is going to be extremely difficult to deal with a trial with him unrepresented. And if you can use your influence with him and his wife to encourage him to have * * * a lawyer."

There followed some discussion concerning father's hostility toward and distrust of lawyers and his unwillingness to be represented by counsel.

At the trial to the court, before a different judge, the state called the CSD worker who had dealt with the parents and the child and introduced the records from Dammasch Hospital and the California records regarding the termination of both parents' rights to a son born in California in 1980. The state also called both parents to testify. No witnesses were called on behalf of mother or father.

After mother had testified, but before father had, the trial court called a recess. After mother and father had left the courtroom, the court made the following remarks:

> "Sit down, everyone, and let me say something.
>
> "Mrs. Myers gives to the layman the uncontrovertible proof of severe mental deficiency.
>
> "Mr. Myers is, obviously, in my judgment, paranoid.
>
> "Their performance in court is an uncontestable demonstration of absolute incapacity to parent. No question about it.
>
> "The Court wants the record to show that, that it has reached this conclusion after a most painful afternoon.
>
> "The Court does not know whether [mother's attorney] agrees with me, and I forbid him to tell me. He is entitled to try the case to the hilt and has an obligation to try the case to the hilt if his client wants him to.
>
> "However, the incapacity of the parents is so pronounced that he will not be failing in his professional duty

nor will he be betraying the interests—the ultimate interests of his clients, but he will be serving the interests of the State and the child rather than the interests of his clients if he fails to make less than a full-bore presentation of a case which is all that he may conscientiously provide.

"I say this, of course, so that he won't feel that if he shortcuts some of the appropriate techniques and procedures that lawyers frequently use in cases such as this that he will be subject to criticism, but the record should show that he will never, if he does so, be subject to any provable charge of professional misconduct. This is a kind of a case in which a showing is patent."

At the end of the state's case, counsel for mother, when asked by the court if he had anything further stated:

"Your Honor, the only thing that I would say [is] that I have talked to members of the family, and I have reviewed the record, and I have talked to a lot of the witnesses in the files, and I couldn't find anybody to bring in as a witness on behalf of my client."

Both parties contend that they were denied due process by the trial court's remarks. We first consider, however, the errors that father alleges occurred in the pretrial proceedings.

■   Father contends that the court erred in failing to appoint counsel to represent him at trial. In Oregon, parents have a right to appointed counsel to represent their interests in a proceeding brought to terminate parental rights, and a waiver of that right to appointed counsel must be shown to have been a knowing waiver. *State v. Jamison,* 251 Or 114, 444 P2d 1005 (1968); *but see Lassiter v. Department of Social Services,* 452 US 18, 101 S Ct 2153, 68 L Ed 2d 640 (1981). Father argues that, because of his mental and emotional illness, he was incapable of a knowing waiver at the time of the pretrial hearing.

■   The record demonstrates that father was informed of his right to appointed counsel and was encouraged to obtain or allow appointment of counsel and refused. His responses to the questions and remarks addressed to him by the court indicate that he understood his rights. He even asked the court if he would be allowed to retain counsel or ask for appointed counsel later in the proceedings if he

believed it necessary. He was also aware that counsel had been appointed to represent mother, and it was emphasized that that attorney was not representing father in the proceedings. We find that father's waiver of his right to appointed counsel was knowing.

■ Father further contends that he was penalized for having chosen to represent himself by the *ex parte* communications between the judge who conducted the pretrial proceedings and counsel for the state and for mother. We do not see how father was harmed by the fact that he was excluded from the discussion that took place in chambers after the hearing on the pretrial motions. The pretrial matters had already been decided, and the judge who heard the motions had indicated that he would not hear the merits of the termination. The only discussions that occurred involved the judge's concern that trial of the case would be difficult if father were not represented by counsel. The judge urged counsel to attempt to persuade father to accept court-appointed counsel for the trial and had himself urged father to accept counsel during the proceedings. In light of the fact that the pretrial motions had already been decided and because the judge involved was not the judge who was to hear the trial on the merits, we conclude that father could not have been harmed by his exclusion from this discussion.

We turn now to the remarks made by the court during the trial of this case on the merits, which both mother and father contend denied their rights to due process of law.

■ ■ "[T]he termination of parental rights is one of the most drastic actions the State can take against its inhabitants." *State v. Jamison,* 251 Or 114, 117, 444 P2d 1005 (1968). The deprivation of such a right may be sustained only if the requirements of due process have been met. *Santosky v. Kramer,* 455 US 745, 102 S Ct 1388, 71 L Ed 2d 599 (1982); *Lassiter v. Department of Social Services,* 452 US 18, 101 S Ct 2153, 68 L Ed 2d 640 (1981); *Stanley v. Illinois,* 405 US 645, 92 S Ct 1208, 31 L Ed 2d 551 (1972); *McCurdy v. Albertina Kerr Homes,* 9 Or App 536, 498 P2d 392 (1972). "When the State moves to destroy weakened family bonds, it must provide fundamentally fair

procedures." *Santosky v. Kramer, supra,* 71 L Ed 2d at 606. In this case, however, although we do not approve of the trial court's remarks, we do not believe that the parents were denied their right to due process by the fact that such remarks were made.

The nature of the process due in parental termination procedures is determined by balancing the factors specified in *Mathews v. Eldridge,* 424 US 319, 335, 96 S Ct 893, 47 L Ed 2d 18 (1976). These factors were paraphrased in *Santosky v. Kramer, supra,* as:

"[T]he private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the contervailing governmental interest in supporting use of the challenged procedure." 71 L Ed 2d at 607.

It is clear that parents have a fundamental interest in retaining their rights to raise their children. *Santosky v. Kramer, supra; Stanley v. Illinois, supra; State ex rel Juv. Dept. v. Jones,* 40 Or App 401, 595 P2d 508 (1979). "* * * [T]he private risk affected is commanding." *Santosky v. Kramer,* 71 L Ed 2d at 605. Although we do not believe that the state has a legitimate interest in encouraging less than diligent representation by defense counsel, or in having a decision made before all the evidence has been received, we conclude that in this case there was no risk of error created by the court's remarks. As to mother, there is no indication that defense counsel made any less than the presentation he would have made had the trial court not remarked as it did. Counsel indicated that he had searched for witnesses on mother's behalf and had found none. The evidence as to mother's incapacity to parent was overwhelming. We need not detail it here. *See State ex rel Juv. Dept. v. Maves,* 33 Or App 411, 576 P2d 826 (1978). On *de novo* review, we are convinced that the record establishes by clear and convincing evidence, *State ex rel Juv. Dept. v. Farrell,* 58 Or App 258, 648 P2d 401 (1982); *see Santosky v. Kramer, supra,* that mother is unable to care for the child and that she will not be able to do so in the foreseeable future.

Father was not present in the courtroom when the court's remarks were made, and there is no suggestion that he was informed of those remarks. There is no reason to believe that he made any less a presentation on his own

behalf than he otherwise would have made. There is overwhelming evidence that his mental and emotional illness make it impossible for him now, or in the foreseeable future, to care for the infant. We conclude, therefore, although the trial court's remarks were ill-advised, that they did not deprive the parents of their right to due process.

Affirmed.