Argued and submitted September 28, 1988, resubmitted In Banc February 14, affirmed June 14, reconsideration denied September 8, petition for review allowed November 14, 1989 (308 Or 500)

In the Matter of Khristina Geist,
Charles Geist and William Geist, Children.

## STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY et al,
*Respondents,*

*v.*

## GEIST,
*Appellant.*

## (86518, 86518A, 86518B; CA A45355)

775 P2d 843

Angela Sherbo, Portland, argued the cause for appellant. With her on the brief was Julie H. McFarlane, Portland.

Christine Chute, Assistant Attorney General, Salem, argued the cause for respondent State of Oregon. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

No appearance for respondents Geist.

JOSEPH, C. J.

Warren, J., specially concurring.

Rossman, J., specially concurring.

## JOSEPH, C. J.

Mother appeals from a judgment terminating her parental rights. ORS 419.523. She challenges the order on the grounds: (1) the state did not prove by clear and convincing evidence that she is unfit; (2) the term "emotional illness" is unconstitutionally vague and overbroad,[1] (3) she was denied due process when the trial court denied her motion to make more definite and certain the allegation that she is suffering from an emotional illness and denied her funds with which to depose the state's psychological expert, and (4) she was denied adequate trial counsel. We affirm.

Mother has three children from her marriage to Bill Geist, who has had a severe drug and alcohol problem and has repeatedly abused mother and the children. When mother left the family home sometime during the week of May 20, 1985, police investigated reports that she no longer wanted the children and that they had not been to school for two weeks. Finding mother gone, the father disoriented and the house dirty and without a sufficient food supply, the police took the children away. The father was indicted on October 16, 1985, for sexual abuse in the first degree and sodomy, and he relinquished his parental rights on April 2, 1987. The father's conduct has left the children emotionally disturbed.

On May 21, 1985, the court placed the children in the temporary custody of Children's Services Division after mother indicated that she needed to get a divorce, a steady job and a new home before resuming their care. On July 31, 1985, the court made the children wards of the court and continued temporary custody in CSD. Mother was ordered to participate in individual counseling, parenting classes and a battered women's group, but she attended only some of the parenting classes. On December 10, 1986, the court again ordered mother to complete CSD's plan and appointed counsel[2] to represent her. Mother again failed to comply with the plan. The state filed an amended petition to terminate her parental

---

[1] Because mother did not raise this constitutional issue at the trial level, we decline to consider it on appeal. *State ex rel Juv. Dept. v. Akins,* 64 Or App 624, 625, 669 P2d 339 (1983); *State v. Easton,* 35 Or App 603, 607, 582 P2d 37, *rev den* 284 Or 521 (1978).

[2] Mother is represented by other counsel on appeal.

rights on May 20, 1987; and on July 17, 1987, the court issued a termination judgment.

The state alleged that (1) mother suffers from an emotional illness that makes it impossible for her to care for the children; (2) she has a history of employment and residential instability; (3) the children have been subjected to sexual and physical abuse while in mother's care; (4) they have suffered from medical and physical neglect while in mother's care; (5) they are emotionally disturbed as a result of the abuse and instability; and (6) mother has failed to attempt to adjust her circumstances after reasonable efforts by social agencies for such a duration of time that it appears that no lasting adjustment will be effected.

Mother contends that the state proved none of the factors in ORS 419.523(2) indicating seriously detrimental conduct or conditions justifying termination.[3] She first argues that, because the only psychotherapist to evaluate her testified that she has a personality disorder, as distinct from an emotional disorder, the state fell short of proving the allegation in the petition. Second, she contends that the only abuse to which the children were subjected came from their father. Because he no longer has contact with the children, she argues, abuse will not occur in the future, and so the children may be returned to her care. Third, she asserts that there was insufficient evidence of physical neglect to justify terminating

---

[3] ORS 419.523(2) provides:

"The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

"(a) Emotional illness, mental illness or mental deficiency of the parent of such duration as to render it impossible to care for the child for extended periods of time.

"(b) Conduct toward any child of an abusive, cruel or sexual nature.

"(c) Addictive use of intoxicating liquors or controlled substances.

"(d) Physical neglect of the child.

"(e) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."

her parental rights. Finally, she argues that, because *she* engaged in no overt conduct seriously detrimental to the children, the state cannot base termination of her parental rights on her failure to make "lasting adjustments."

1.     On *de novo* review, however, we conclude that the state established the allegations by clear and convincing evidence. First, the essence of the testimony of Dr. Hoffman-Wilde, a psychotherapist testifying for the state, is that mother has an anti-social personality, a condition that is particularly difficult to treat. The evidence also establishes that, as a result of her psychological problem, mother interacts generally with her children with anger, hostility and dependency. Expert testimony established that, having suffered emotional and behavioral disturbances as a result of their father's abuse, the children need a safe, nourishing and stable environment, if they are to avoid further damage. Because mother is extremely resistant to seeking treatment for herself, it is impossible for her to care adequately for the children for extended periods of time.

Mother does not dispute that she has a history of employment and residential instability. As the trial court noted, that cannot alone be a basis for termination. Nevertheless, it bears on the issue of whether, given the children's special need for stability, they can be returned to mother without a substantial risk of their suffering more emotional damage.

Mother's argument that she did not abuse the children is not relevant to the state's allegations. The state proved that, knowing that the father had physically abused the children, mother did nothing to protect them. At times, she left them with the father when she went to work. She also left them with him when she separated from him. Mother now has a boyfriend, and she admits that he, too, has been violent toward her. Mother has refused counseling, and there is no indication that she is any better able to ensure the safety of her children now than when she was with the father.

The evidence concerning mother's physical and medical neglect is that the children have untreated dental cavities, that they are often ill, that she has not kept them in school regularly and that their nutritional needs may not be being met adequately. The evidence of physical neglect may not, by

itself, be strong enough to support termination, but it does support the state's contention that mother is not able to safeguard the interests of the children.

Mother does not dispute that the children are emotionally disturbed or that they have special needs as a result. Moreover, the evidence of her mental condition and her neglect of the children's welfare leads us to conclude that returning the children to her would likely result in further physical and emotional harm. Because she has rejected counseling and other efforts of state agencies to help her be an adequate parent, there appears no realistic chance that the children can be returned to her care without serious danger to them. Consequently, we conclude that the evidence, taken as a whole, justifies terminating her parental rights.

**2.**      Mother also claims that the trial court's failure to grant two pretrial motions kept her ignorant of precisely what emotional illness the state claimed that she suffers. According to mother, had the state been required to make its allegation more definite and certain or had she been granted funds with which to depose the state's expert, she could have rebutted the state's expert through cross-examination or by calling an expert of her own. She argues that the failure to provide her with those avenues of discovery was so damaging as to amount to a denial of due process.

The record discloses, however, that the trial court ordered the state to give mother a witness list and granted her request for an investigator to contact, among others, Hoffman-Wilde. Mother also apparently received copies of all of the psychological reports relating to her. Because she could have obtained specific information about her alleged illness through interviews with the state's expert or review of the records, her contention that she was prevented from presenting an effective defense is without merit.

**3.**      Mother raises on appeal for the first time the contention that she was denied the effective assistance of counsel that she claims is guaranteed as a matter of due process and by

ORS 419.525(2).[4] We have not had occasion to consider such a claim in the context of termination of parental rights, and we face the critical preliminary question of whether it can be decided on direct appeal.[5]

In *State v. Jamison,* 251 Or 114, 117-18, 444 P2d 15, 444 P2d 1005 (1968), an indigent mother challenged an order terminating her parental rights on the ground that the juvenile court had failed to advise her of her right to a court-appointed attorney. In considering the nature of the mother's right to counsel, the Supreme Court noted:

> "The permanent termination of parental rights is one of the most drastic actions the state can take against its inhabitants. It would be unconscionable for the state forever to terminate the parental rights of the poor without allowing such parents to be assisted by counsel. Counsel in juvenile court must be made available for parents and children alike when the relationship of parent and child is threatened by the state."

The court also observed: "While the case at bar is not a criminal matter, the consequences of the denial of counsel are as serious as they are in most criminal prosecutions." It held that, as in criminal cases, "waiver of counsel must be shown to have been a knowing waiver." 251 Or at 118. When *Jamison* was decided, *former* ORS 419.498(2) required the appointment of counsel in termination cases if the parent was indigent. The thrust of the decision is that, to establish a waiver of that right, the standards applicable in criminal cases are appropriate in termination cases, involving indigent parents. The case

---

[4] ORS 419.525(2) provides:

"If the parents are determined to be indigent by the court, and request the assistance of appointed counsel, the court shall appoint an attorney to represent them at state expense. Appointment of counsel under this section is subject to ORS 135.055 and 151.410 to 151.480 and to applicable contracts entered into under ORS 151.460."

Mother argues that this section and ORS 151.410 to ORS 151.480 require a trial court to appoint counsel qualified under the Supreme Court's Attorney Eligibility Standards to represent indigent clients in termination cases. She contends that, because her counsel was not on the appointment panel for termination cases and had been removed from another panel, denial of that counsel's motion for leave to withdraw denied mother effective counsel. However, whether she received effective assistance of counsel is not dependent on whether the attorney was on an approved panel.

[5] It is clear that ineffectiveness of counsel cannot be reviewed on direct appeal in a criminal case. ORS 138.220; *State v. Rutledge,* 2 Or App 374, 377, 468 P2d 913 (1970).

said nothing about determination of competence of counsel who is appointed.

Presently, ORS 419.525(2) requires the appointment of counsel for indigent parents in termination cases, and we may assume that the legislature intended that competent and effective counsel be appointed. However, it has not provided a specific procedure or forum for determining whether a parent has been afforded effective assistance of counsel. We have neither had cited to us nor found any United States Supreme Court authority saying, or even suggesting, that a statutory right to counsel, as in this case, implicates a federal due process requirement that the state must provide a procedure and a forum for resolving that issue. Certainly, there is nothing in the words of the statute itself that suggests that failure to provide competent and effective counsel by appointment is the kind of error that can lead to reversal of a judgment.

**4.** However, mother's argument goes beyond the statutory right to counsel. If, she asserts, she is entitled to appointed counsel as a matter of due process, failure to provide her with effective counsel would deny her due process trial rights, and so she must be able to have the issue decided on direct appeal. In *Lassiter v. Department of Social Services,* 452 US 18, 27, 101 S Ct 2153, 68 L Ed 2d 640 (1981), the Supreme Court held that, in determining whether due process requires that a parent receive appointed counsel, a court must weigh "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." After listing several factors to be weighed, the Court stated that, although Lassiter's interest in retaining her rights as a parent was great, none of the factors was present in her case; therefore, it held that she did not have a due process right to appointed counsel. No *Lassiter* issue is presented in this case, because that case involves *only* the right to counsel. Here, mother was furnished counsel pursuant to state law.

The special concurrence by Rossman, J., after a bit of hyperbole about locking courtroom doors, expresses a feeling of being "at a loss as to how the majority reaches its result." 97 Or App at 21. Most of the misdirection flows from an apparent belief that there is some question about *whether* mother was entitled to the assistance of appointed counsel. Under ORS

419.525(2), that is hardly an open question, let alone a question presented in this case. Moreover, no *Lassiter*-type issue is presented, as explained above. The only question that can fairly be discussed in this case is whether this court, on direct appeal, should determine whether mother's appointed counsel rendered her effective assistance. Discussion of anything else only confuses the issue.[6]

The trial that produced the record before us was not for the purpose of determining anything about the conduct of mother's counsel. No facts *about counsel* were developed in the adversarial way that lies at the heart of judicial factfinding. The record does not disclose, *and could not be expected to disclose,* anything about counsel's conduct except what it shows about the issue raised in mother's defense. In her brief on appeal, mother assaults the sense and the conduct of her trial counsel rather freely; it is notable that that counsel has never been given (and would never, if the specially concurring views were adopted, be given) a forum in which to respond. Much could be said about the consequences that would follow if we were to accept mother's assignment of error. We will not do that. Instead, even though we can accept mother's assertion of a right to competent and effective counsel under the statute, direct appeal on the trial court record is not the appropriate forum.[7] The legislature has not created a special forum, as it has in criminal law matters (ORS 138.510 - ORS 138.680), and there is no source from which we may derive the authority to create one. We hold that the question of the effectiveness of counsel may not be reviewed on direct appeal.

---

[6] Before deciding mother's federal constitutional claim, we would consider any state constitutional questions raised. *State v. Campbell,* 306 Or 157, 162, 759 P2d 1040 (1988). However, no such questions arise. Article I, section 11, of the Oregon Constitution gives an accused the right "to be heard by himself and counsel" only in a criminal prosecution. Moreover, Oregon's constitution has no Due Process Clause. *See* Linde, "Without 'Due Process': Unconstitutional Law in Oregon," 49 Or L Rev 125 (1970). We are aware of no provision in Oregon's constitution that would support mother's right to counsel, and we deal only with her federal claim.

[7] It is more than a little ironic that the result under the specially concurring opinion of Rossman, J., would be that mother was not deprived of the right to effective counsel. There is something of the same irony in *Lassiter.* Rather than getting seriously involved in misleading, special pleading analysis, as it does, the concurring opinion ought not to *decide* the procedural issue but, instead, ought simply to *assume* that the issue can be decided on direct appeal and then go ahead and decide it against mother, because she loses anyway. If one looks beyond that concurrence's procedural views, it is intriguing to consider its *res judicata* or collateral estoppel implications.

Affirmed.

**WARREN, J.,** specially concurring.

I agree with the majority that the right to appointed counsel provided in ORS 419.525(2) implies the right to effective assistance of counsel. I am not as sure as the majority that the issue of adequacy of counsel cannot be raised on direct appeal in a proper case. However, even if the issue of adequacy of counsel can be raised on direct appeal, the error must be preserved in the trial court before we can review it. That was not done here. I would hold that the error was not properly preserved and that, therefore, we cannot reach it.

The majority notes that in the trial court no record on the adequacy of counsel issue was made. I do not believe that an inadequately developed record below makes a question unreviewable on direct appeal; it merely makes review unlikely to reveal error. I agree with the majority that, on the record we have, inadequacy of counsel has not been shown.

Judge Rossman's special concurrences adequately address the difficulties involved both in preserving error and in perfecting a record for direct appeal. Because no satisfactory procedure exists for review of adequacy of counsel claims in termination cases, the matter should be addressed by the legislature.

**ROSSMAN, J.,** specially concurring.

There is no basis for holding that mother cannot raise a claim of ineffective counsel on direct appeal. In doing so, the majority locks the courtroom doors to parents who may have some basis to complain that a child has been taken from them unfairly. Although the majority reaches the correct result, in that mother does not prevail on this appeal, I do not believe that we can dismiss a parent's constitutional right to effective counsel with such ease. I write separately to express that view.

The majority may be correct in arguing that mother's *statutory* right to counsel does not present a federal due process claim requiring a procedure for resolving that issue. *Wainwright v. Torna,* 455 US 586, 102 S Ct 1300, 71 L Ed 2d 475 (1982). There is more than a statutory right to counsel involved in this case, however. Both state and federal case law establish that mother's right to the effective assistance of

counsel in a termination proceeding is constitutionally guaranteed. It follows that she must be afforded some means of vindicating that right.

On the federal level, the United States Supreme Court has held that, in determining whether due process requires that a parent receive appointed counsel, a court must weigh "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions." *Lassiter v. Department of Social Services,* 452 US 18, 27, 101 S Ct 2153, 68 L Ed 2d 640 (1981). In that context, the Court also considered whether criminal charges could be based on evidence in the termination hearing, whether the state's substantive standards for termination were complicated, whether the hearing would be "likely to produce difficult points of evidentiary law" and whether expert medical and psychiatric testimony would be presented. 452 US at 29. The Court stated that, although Lassiter's interest in retaining her status as a parent was great, none of the factors noted above were present in her case; therefore, it held that she did not have a due process right to appointed counsel. *Lassiter v. Department of Social Services, supra,* 452 US at 32.

In the present case, on the other hand, ORS 419.523 is a technical statute, and significant evidentiary questions were raised at mother's hearing. Additionally, the state called an expert witness to testify that mother is an unfit parent, in part because she is emotionally ill. Applying the *Lassiter* factors, it is clear that, because she could not receive a fair trial without representation, mother had a constitutional right to appointed counsel. Moreover, the right to counsel is the right to "effective" legal representation. *Powell v. Alabama,* 287 US 45, 53 S Ct 55, 77 L Ed 158 (1932).

Oregon courts have recognized that parents in a termination proceeding have a due process right to adequate counsel. In *State v. Jamison,* 251 Or 114, 117, 444 P2d 15, 444 P2d 1005 (1968), an indigent mother challenged an order terminating her parental rights on the ground that the juvenile court had failed to advise her of her right to a court-appointed attorney. In considering the nature of the mother's right to counsel, the Oregon Supreme Court noted:

"The permanent termination of parental rights is one of

the most drastic actions the state can take against its inhabitants. It would be unconscionable for the state forever to terminate the parental rights of the poor without allowing such parents to be assisted by counsel. Counsel in juvenile court must be made available for parents and children alike when the relationship of parent and child is threatened by the state."

It thus held that, because the relationship between parent and child is fundamental, due process requires appointment of indigent counsel in termination cases. *See also State ex rel Juv. Dept. v. Myers,* 58 Or App 622, 650 P2d 113, *rev den* 293 Or 653 (1982).

Given the nature of mother's right to effective counsel, I am at a loss as to how the majority reaches its result. Nothing bars our consideration of the claim in this instance. Indeed, we have exercised our jurisdiction over similar claims at least twice before.[1] In *State ex rel Juv. Dept. v. Wade,* 19 Or App 314, 527 P2d 753, *on reconsideration* 19 Or App 835, 528 P2d 1382 (1974), *rev den, app dismissed* 423 US 806 (1975), *overruled on other grounds, F. v. C.,* 24 Or App 601, 547 P2d 175, *rev den, cert den* 429 US 907 (1976), for example, we considered whether children in a termination proceeding must be appointed independent counsel. We noted:

"The basic human right to maintain and enjoy the relationship which normally exists between the parents and the children is held no less by the children than by the parents. When the United States Supreme Court ruled this right to be subject to constitutional protection * * * *it necessarily guaranteed that neither parents nor children shall be deprived of it without due process. In Re Winship,* 397 US 358, 90 S Ct 1068, 25 L Ed 2d 368 (1970); *Tinker v. Des Moines School Dist.,* 393 US 503, 89 S Ct 733, 21 L Ed 2d 731 (1969); *In Re Gault,* 387 US 1, 87 S Ct 1428, 18 L Ed 2d 527 (1967); *Haley v. Ohio,* 332 US 596, 68 S Ct 302, 92 L Ed 224 (1948)." 19 Or App at 319. (Emphasis supplied; some citations omitted.)

Characterizing the issue as "[w]hether either the district attorney or the counsel for the parents is capable of providing the children with the 'effective' representation to which they

---

[1] ORS 419.561(1) provides, in pertinent part:

"Except as provided in ORS 419.578, any person whose right or duties are adversely affected by a final order of the juvenile court may appeal therefrom."

have a constitutional claim," we concluded that due process required that children always be provided counsel separate from that of their parents or the state. 19 Or App at 321.

We subsequently altered that view in *F. v. C., supra,* 24 Or App at 607, holding that whether due process requires independent counsel for children in a termination proceeding must be determined on a case by case basis. We did not, however, retract our willingness to address ineffectiveness of counsel claims in the termination context. *See also State ex rel Juv. Dept. v. Bryant,* 84 Or App 571, 735 P2d 5 (1987). Clearly, not only *may* we hear claims of ineffectiveness of counsel in termination cases; we have an *obligation* to provide a forum in which parents may vindicate fundamental constitutional rights. That is consistent with the position of the majority of jurisdictions, which hear such claims on direct appeal. *See, e.g., V.F. v. State,* 666 P2d 42 (Alaska 1983); *In Interest of D.W.,* 385 NW2d 570, 580 (Iowa 1986); *In Interest of Rushing,* 9 Kan App 2d 541, 684 P2d 445 (1984); *In re Mosely,* 34 Wash App 179, 660 P2d 315 (1983); *but see In Re Stephen,* 401 Mass 144, 514 NE2d 1087 (1987) (holding that, "[a]bsent exceptional circumstances, we do not review claims of ineffective assistance of counsel for the first time on appeal.")

Unquestionably, the majority has unearthed legitimate institutional concerns about hearing claims of ineffective counsel on direct appeal. Just as certainly, those problems require legislative attention. However, they neither arise in mother's case nor present the parade of horrors that haunts the majority.[2] Because mother does not contend that she has

---

[2] The majority has expressed two main concerns with considering mother's claim on direct appeal. First, it notes that applying the rule that matters subject to review on direct appeal must be "raised or waived" will create a host of problems. For example, trial counsel will be required to defend the termination case while simultaneously making a record regarding his adequacy, and he would invariably be required to file a notice of appeal in order to preserve any existing error. Second, it contends that reviewing adequacy of counsel on the record might be inadequate for constitutional purposes. Thus, remand would be required, causing intolerable delay in the termination process.

Assuming that hearing ineffectiveness claims on direct appeal *could* pose insoluble problems, this is not the case in which to address them. First, one of mother's assignments of error is that the trial court did not grant her trial counsel's motion to withdraw, which was based on her belief that she should not be "doing this case" because she had been removed from the Juvenile Court list. That motion probably gave the trial court sufficient opportunity to consider counsel's adequacy, thus preserving mother's error. Moreover, mother does not contend that she has new evidence

new evidence to present on remand, I would decide mother's inadequacy claim on the record before us now.

First, I agree with mother that the Sixth Amendment standard should apply in measuring adequacy of counsel. In discussing the right to counsel of indigent parents in termination proceedings, the Oregon Supreme Court has noted: "While the case at bar is not a criminal matter, the consequences of the denial of counsel are as serious as they are in most criminal prosecutions." *State v. Jamison, supra,* 251 Or at 118. The severity of the consequences, coupled with the adversarial and accusatory nature of such proceedings, makes society's interest in obtaining a fair result as great as in a criminal trial. Recognizing that fact, most state courts that have considered the issue have applied a Sixth Amendment analysis, despite the civil nature of a termination.[3] Accordingly, mother must show that trial counsel's performance has been deficient, resulting in prejudice to her at trial. *Strickland v. Washington,* 466 US 668, 687, 104 S Ct 2052, 80 L Ed 2d 674 (1984). Mother must overcome a strong presumption that counsel rendered reasonable professional assistance. *Strickland v. Washington, supra,* 466 US at 689.

Mother asserts that, cumulatively, trial counsel's performance establishes a failure to exercise the skill, judgment or diligence of a reasonably competent attorney. She contends that trial counsel's failure to discover the court legal file or

---

on the adequacy issue to present or that for some other reason fairness would dictate remand. Therefore, our review on the record made in the trial court does not offend her due process rights.

Even were this the appropriate case in which to address the majority's concerns, the problems it points out are not totally insoluble. For one thing, "raise it or waive it" is "not an invariable rule. Where important considerations of public policy are encountered in the solution of a case before the court, it has the duty to apply the law which is dictated by that policy." *Agan et al v. U.S. National Bank,* 227 Or 619, 629, 363 P2d 765 (1961). If we apply that exception in cases involving ineffectiveness of counsel claims in the termination context, most of the dilemmas pointed out by the majority will disappear.

The fact that many termination cases would require remand remains a problem. However, remand would not be necessary in all cases, and the state has offered a reasonably expeditious procedure for handling such cases when they arise. Given the nature of parents' right to effective counsel, and *until the legislature provides a better plan,* hearing such claims on direct appeal seems the only reasonable alternative.

[3] *See, e.g., V.F. v. State, supra; In Interest of Rushing, supra; Cf. In re Moseley, supra* (applying a civil test which asks whether the attorney was effective in providing a "meaningful hearing").

court social file in preparation for trial, her failure to cite *State ex rel Juv. Dept. v. Habas,* 299 Or 177, 700 P2d 225 (1985), as controlling precedent on the mental illness issue and her failure to use the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (3d ed 1985) (DSM III)[4] during cross-examination of a psychiatric expert demonstrate inadequate preparation and investigation. According to mother, trial counsel was inept in her use of the rules of evidence, failing to qualify an individual as a social work expert, failing to preserve the testimony of an unavailable witness and allowing the state to get damaging testimony in evidence without objection. Most significantly, mother contends, trial counsel's theory of the case was completely untenable. Instead of challenging the state's contention that mother is emotionally ill, counsel argued that she was suffering the "battered women's syndrome" and so was not at fault for failing to comply with CSD's plan. According to mother, far from being a "defense," trial counsel's theory and cross-examinations actually helped the state's case.

On the record before us, it cannot be said that mother was denied effective assistance of counsel. As the Oregon Supreme Court has noted,

> "The constitution gives no defendant the right to a perfect defense—seldom does a lawyer walk away from a trial without thinking of something that might have been done differently or that he would have preferred to have avoided. Adequacy of assistance of counsel allows for errors which are inconsequential in the context of the entire trial or proceeding. It also allows for tactical choices that backfire, because, by their nature, trials often involve risk." *Krummacher v. Gierloff,* 290 Or 867, 875, 627 P2d 458 (1981).

With respect to counsel's trial strategy, I would not second guess her decision to prove and argue that mother's non-compliance with the terms of CSD's service plan was the result of numerous barriers, including the "battered woman's syndrome," but that, because those barriers were diminishing, she would be able to adjust her condition in the future. *See Krummacher v. Gierloff, supra,* 290 Or at 875. Moreover, as far as the record discloses, there may have been good reason for

---

[4] The manual provides a standard system for making psychiatric and psychological diagnoses.

trial counsel's inability to qualify a particular witness as an expert. Finally, there is ample evidence supporting the termination judgment. Even assuming that trial counsel did make some evidentiary mistakes, mother has not met her "burden of showing that the decision reached would reasonably likely have been different absent the errors." *Strickland v. Washington, supra,* 466 US at 696.

To conclude, we would break no new ground by hearing mother's claim on direct appeal. On the other hand, the majority's holding makes it possible for a parent to lose her parental rights because of inadequate counsel and have no forum in which to contest that result. Because "there is no place in our system of law for reaching a result of such tremendous consequences * * * without effective assistance of counsel," I would not foreclose such a claim. *In Re Gault, supra,* 387 US at 30 (*quoting Kent v. United States,* 383 US 541, 86 S Ct 1045, 16 L Ed 2d 84 (1966)).