Argued and submitted August 13, 1990, affirmed April 17, reconsideration denied
August 21, petition for review denied September 24, 1991 (312 Or 150)

In the Matter of
Charlyn Danyel Austin, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF CLACKAMAS COUNTY,
*Respondent,*

*v.*

Jamesyn L. CHARLES
and Terald A. Austin,
*Appellants.*

(J88-3-4; CA A62564 (Control))

In the Matter of
Elaine Marie Austin, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF CLACKAMAS COUNTY,
*Respondent,*

*v.*

Jamesyn L. CHARLES
and Terald A. Austin,
*Appellants.*

(J88-3-6; CA A62565)
(Cases Consolidated)

810 P2d 389

Arthur P. Stangell, Oregon City, argued the cause and filed the brief for appellants.

Wendy J. Paris, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Michael D. Reynolds, Assistant Solicitor General, Salem.

Howard Clyman, West Linn, argued the cause and filed the brief for children.

Before Richardson, Presiding Judge, and Warren and De Muniz, Judges.

RICHARDSON, P. J.

Warren, J., concurring.

## RICHARDSON, P. J.

The parents of Charlyn and Elaine Austin appeal an order making the children wards of the court and placing them in the legal and physical custody of CSD. They contend that the court erred by denying their motion to dismiss the amended petition and that neither they nor the children were provided competent counsel. We affirm.

Jamesyn Charles is the mother of three children, Charlyn and Elaine Austin, ages two and three at the time of trial, whose father is appellant Terald Austin, and Jade Charles, age eight, whose father is Dean Charles. Jade was also made a ward of the court, and mother also challenges that order in a separate appeal. *State ex rel Juv. Dept. v. Charles,* 106 Or App 637, 810 P2d 393 (1991).

On February 28, 1988, a deputy sheriff, in response to information from a neighbor, went to parents' home to check on the children. He was directed by father to a bedroom that was secured by a hook latch. The two children involved in this appeal were locked in the room. They were naked and smeared with human feces and other filth. There were no beds in the room, only two blankets. The walls and floor of the room were covered with feces. Father told the officer that the children were locked in the room to keep them away from food in the kitchen. The third child, Jade Charles, was found in another part of the house. She too had dried human feces on much of her body, including her face and her hair. The children were taken into protective custody.

A preliminary hearing was held on February 29, 1988. At that time, one attorney was appointed to represent parents and one to represent all three children. The court determined that temporary custody of all three children would remain with CSD and ordered that a petition be filed to make the children wards of the court. The petition was filed March 3, 1988, but neither the petition nor a summons was served on parents pursuant to ORS 419.486.

Parents were indicted on April 13, 1988, for criminal mistreatment of all three children. The charges arose out of the same incident that resulted in the children being taken into protective custody. They were convicted of the charges on December 5, 1988, and sentenced on January 30, 1989. On

April 7, 1989, a different attorney was appointed to represent both parents in this proceeding, and the previous attorney withdrew.

After several postponements, the first jurisdictional hearing on the petition began July 7, 1989. Parents moved to dismiss the petition, because CSD had not complied with statutory procedures regarding service of summons and a timely hearing. The state moved for a continuance to file an amended petition to include the facts of parents' criminal convictions. Parents' counsel agreed to the filing of the amended petition and agreed to accept service of summons on their behalf. The amended petition was filed and summonses served on July 10, 1989, and the jurisdictional hearing was commenced on July 17, 1989. Parents moved to strike the amended petition on the ground that the allegations related to events that had occurred over a year before the date of the petition. The motion was denied, and the court found that the children were within the jurisdiction of the court, made them wards of the court and removed them from parents' custody.

■ In their first assignment, parents contend that the court erred by denying their motion to strike the amended petition. They also appear to argue, under this assignment, that the court should have dismissed the original petition, because no summons was served within 60 days, ORS 419.486(1), and no timely hearing was held. Even if it was error not to dismiss the original petition, parents are not entitled to a reversal now. They consented to the filing of the amended petition and were properly served with summonses, and the disposition of the children was based on that petition.

■ Parents, however, contend that the amended petition was insufficient as a matter of law and cannot be the basis of the court's jurisdictional decision, because the facts alleged to justify jurisdiction are the same as in the original petition. They argue that, because the criminal convictions were based on the facts alleged in the original petition, recitation of the convictions adds no new factual predicate for jurisdiction. We disagree. An amended petition may be filed at any time. ORS 419.500(1). The court had jurisdiction to order temporary custody. The fact that parents had been found guilty beyond a reasonable doubt of criminal mistreatment of the children

after the original filing is a compelling reason to allow an amended petition.

In the second assignment, parents argue that the court did not appoint competent counsel for them under ORS 419.498(2).[1] They contend that counsel was inadequate, because he "allowed the cases to sit for over one year without any action or request for action." They were prejudiced, they contend, because the long delay allowed CSD to keep the children for a longer period of time in order to further delay reintegration of them into parents' home.

■    The state recognizes that, in *State ex rel Juv. Dept. v. Geist,* 310 Or 176, 796 P2d 1193 (1990), the court held that a parent could raise adequacy of her counsel on direct appeal, but, it argues, that holding was based on the appointment of counsel in termination cases, ORS 419.525(2), and the special nature of those cases. That rationale, the state posits, is not transferrable to wardship cases, which do not have the same consequences or necessity to avoid delay.

The Supreme Court's holding in *Geist* was in large part premised on the conclusion that a constitutional or statutory right to counsel includes a right to adequate counsel. That right was said to be illusory if there were no procedure for review of claims of inadequate representation. In fashioning an appropriate procedure for review, the court noted the potentially drastic results of a termination proceeding for parents and the need to reduce the delay of a final determination so that children would be in limbo for a shorter period of time. Allowing review of counsel's performance on direct appeal was the procedure suggested by the court to meet the identified goals.

It is true, as the state posits, that the parents' threatened loss in wardship proceedings is something less than a complete and irrevocable termination of parental rights. However, at the outer reaches of a wardship proceeding, the disposition can be a long-term deprivation of custody and a substantial intervention in the parent-child relationship. Many parental termination proceedings begin with juvenile

---

[1] The appointed attorney who was substituted for parents' previous counsel on April 7, 1989, represents them on appeal. Parents contend only that their first attorney was inadequate.

wardships, which can themselves be long term. The possible deprivation for parents in wardship cases is so drastic that they have a similar need for representation as do parents facing termination of their rights to their children. *See State ex rel Juv. Dept. v. Grannis,* 67 Or App 565, 680 P2d 660 (1984). We conclude that direct review of appointed counsel's performance is available in this type of proceeding.

In *Geist,* the court held that the parent had the burden of proof to establish trial counsel's inadequacy. The court described the applicable standard:

> "In reviewing a claim that trial counsel was inadequate, we look to the totality of the circumstances. Absent a finding that a person was denied a fair trial because of the inadequacies of that person's trial counsel, citation of other tactical decisions counsel could have made, or should have made better, is not particularly instructive." 310 Or at 191.

Parents only complain about the adequacy of their first counsel. The state suggests that their second appointed attorney should have raised the issue at trial and made a record for review. Because he did not, the state argues, the issue is not preserved. Although there is appealing logic to that argument in the particular circumstances of this case, we conclude that the rationale of *Geist* does not require preservation of the issue in order to raise the claim on appeal.

The principal contention of parents is that their first appointed attorney failed to initiate proceedings or file motions to obtain a quick hearing after the original petition was filed. There is, however, a reasonable explanation for the delay. During that time, there were criminal charges pending against parents relating to their treatment of the children. After the criminal cases were concluded, they had new counsel and were accorded a hearing on the amended petition. They did not complain about the fairness of the hearing on the amended petition. We conclude, from our review of the record, that parents have not met their burden of proof that the first counsel's performance was inadequate or prejudicial to them or that they were denied a fair trial.

Their final assignment is that the court erred by not appointing adequate counsel for the children. The state and the children argue that parents have no standing to make that claim. There may be circumstances when parents should be

allowed to raise and litigate the adequacy of their children's appointed counsel. This case does not involve those circumstances. The children and parents, through their counsel, became adversaries.

Affirmed.

**WARREN, J.,** concurring.

I agree with the majority and write only to express my concern over the lack of any effective procedure by which a record can be made in the trial court to facilitate appellate review.

Both this court and the Supreme Court have identified a need for prompt judicial scrutiny of claims of inadequacy of counsel in termination cases. In this case, we now recognize that need in juvenile wardship cases.

In *State ex rel Juv. Dept. v. Geist,* 310 Or 176, 796 P2d 1193 (1990), the Supreme Court held that, because the legislature has not provided a procedure for vindicating the statutory right to adequate counsel in parental termination proceedings, the Court had to fashion an appropriate procedure. The procedure must be available on direct appeal, even though the issue had not been preserved in the trial court. 310 Or at 184 n 9. The problem is that, in the absence of preservation of error and the making of a record for appellate review, appellate review will almost always be a futile gesture.

This case provides a good example of that futility. Petitioner can only point to certain actions that her trial counsel did not take. There is nothing in the record to explain why her attorney chose the course of action that he took. There could have been valid tactical reasons for the counsel's actions. Or, the counsel could have been inept, as petitioner alleges. The problem is that the adequacy of counsel cannot be realistically tested in the absence of a record on that issue. As I stated in my concurrence in *Geist* in this court, an inadequately developed record does not make a question unreviewable on direct appeal; it merely makes review of that record unlikely to reveal error. *State ex rel Juv. Dept. v. Geist,* 97 Or App 10, 19, 775 P2d 843 (1989).

The cumbersome procedure suggested by the Supreme Court in *State ex rel Juv. Dept. v. Geist, supra,* 310 Or

at 192 n 16, to afford a hearing after a direct appeal by a remand from the Court of Appeals to the trial court will only delay proceedings that need to be expedited. The issue we deal with here is one of great importance and deserves legislative attention.