Argued and submitted April 4, 2014, affirmed March 4, petition for review allowed June 4, 2015 (357 Or 324)

In the Matter of M. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. L.,
*Appellant.*

Clackamas County Circuit Court
110440J;
Petition Number 110440J02;
A155300 (Control)

In the Matter of R. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. L.,
*Appellant.*

Clackamas County Circuit Court
110441J;
Petition Number 110441J02;
A155301

In the Matter of T. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. L.,
*Appellant.*

Clackamas County Circuit Court
110442J;
Petition Number 110442J02;
A155302

344 P3d 1123

Holly Telerant, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Erin K. Galli, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

ARMSTRONG, P. J.

Egan, J., dissenting.

**ARMSTRONG, P. J.**

In this consolidated appeal, father appeals judgments changing the permanency plans for his three children.[1] Following a permanency hearing in which father's counsel did not appear, the juvenile court changed the plan for father's oldest child from reunification to "another planned permanent living arrangement" (APPLA) and changed the plans for father's two younger children from reunification to guardianship. The substance of father's challenge on appeal is that his counsel's failure to appear at the permanency hearing constituted inadequate assistance of counsel under *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 796 P2d 1193 (1990), requiring reversal of the judgments—an argument that father makes for the first time on appeal. The Department of Human Services (DHS) responds that we should decline to consider that challenge "because father had the option of raising that complaint to the trial court and that court is the more appropriate forum to resolve such challenges." We agree with DHS. ORS 419B.923 provides a trial-level mechanism to set aside judgments in dependency cases, and, because that remedy is available to challenge the adequacy of dependency counsel, *Geist* is inapplicable. Because father did not preserve his claim of inadequate assistance of counsel in this case, we do not consider it. For that reason, we affirm.

In March 2013, the juvenile court took jurisdiction over mother and father's three children—then ages 8, 12, and 14—based, as to father, on father's stipulation that his use of alcohol and controlled substances interferes with his ability to provide safe, appropriate, and consistent care for the children.[2] Father was ordered to participate in services. Neither parent appeared at the first review hearing on June 5, 2013, though their attorneys were present. The court scheduled a permanency hearing for August 29 to determine whether the permanency plans for the children should be changed from reunification to other plans. Father

---

[1] Mother is not a party to this appeal.

[2] This was the second time that the children had been made wards of the court. They were previously removed from parents' care for five months beginning in April 2011 due to concerns about parents' use of controlled substances.

and mother failed to appear at the start of that hearing, and father's attorney also failed to appear. Attorneys for DHS, the children, and mother were present. The court tried, unsuccessfully, to contact father's attorney and waited 12 minutes before beginning the hearing, noting that it was "very unusual" for father's attorney not to be present. The court then proceeded with the hearing and, after taking evidence and hearing argument (including from children's appointed counsel, who advocated in favor of changing the plans), decided to change the permanency plan for the oldest child, R, to APPLA and to change the plans for the younger children, M and T, to guardianship.

At that point, father and mother arrived, and the court informed them of its decision to change the permanency plans. The court explained:

"This is a legal juncture of significance, but by no means is it the end. As I said the last time, if there was not progress by today, this would be a short hearing. There hasn't been. I don't want anybody to feel bad. I'm not up here to kick people around. Ours is not a punishment-oriented system. It is about getting kids back to their parents.

"But if they are unable to distance themselves from things that are risky to kids, like drug use and the like, then the kids are entitled to a safe, permanent home. They are entitled to that sooner, not later. Now, every kid is entitled to that. That's the assumption that the law makes. These decisions are designed to accomplish that.

"The point here for the parents, [mother and father], you can change the circumstance now. I just decided that we were going to keep this hearing on for October. That's because the plan could change back at that next hearing, if you can embrace recovery and put yourself in the position to be a safe parent. You don't have to have it all accomplished by October. But if you could get yourselves into treatment and embrace recovery, then there is the potential that the plan could change back in October."

The discussion that followed was, in large part, devoted to the court's concern about R, who had run away from foster

care and was, apparently, living on the streets.[3] During the course of that conversation, father told the court—in an unsworn statement—that he "was under the impression that [he] was doing what DHS was requesting of [him]." He stated that he "went through Tigard Detox," was "enrolled in Clackamas County Behavioral Health Program," and had had clean urinalyses. He also indicated that he had, the day before the hearing, dropped off a release to DHS. Father did not say anything about the absence of his attorney at the hearing; nor did he indicate to the court that he was opposed to the change in permanency plans for the children.

The court subsequently entered permanency judgments consistent with its decision at the hearing. Father did not move to set aside the judgments. See ORS 419B.923 (set out below at 269 Or App at 460-61).

On appeal, father seeks to have those judgments reversed. He purports to assert nine separate assignments of error; however, he presents a single combined argument in which he contends that, because his counsel failed to appear at the permanency hearing, he received inadequate assistance of counsel, was consequently denied a fundamentally fair hearing, and, under Geist, is entitled to reversal of the permanency judgments.[4] Father acknowledges that he failed to preserve that argument, but contends, quoting Geist, 310 Or at 184 n 9, that he is "not required to have preserved his claim because 'the general rule that appellate courts will only consider error that has been preserved at trial need not be strictly applied to the issue of appointed counsel's adequacy in a parental rights termination proceeding.'" We disagree. A close reading of Geist, in light of the enactment of ORS 419B.923 and our cases construing that statute, leads to the conclusion that, as the state contends, father's claim

---

[3] For example, at one point, the court stated:

"I'm scared to death for [R]. In four years of doing this work, I have had one other child that I was as nervous about as I am about [R] and her circumstances. She needs her parents to try to bring her back to the agency and put the agency in a situation where they can try some foster care settings. I know they haven't been successful in the past, but that is what needs to happen."

[4] To the extent that father can be understood to raise a separate contention that the juvenile court also erred in proceeding with the permanency hearing in father's absence, we reject that contention without further discussion.

as to the inadequacy of his appointed trial counsel must be made in the first instance in the juvenile court.

We begin with *Geist*. *Geist* involved the reviewability on direct appeal of a judgment terminating the mother's parental rights. The Supreme Court held that the statutory right to counsel for indigent parents in termination cases included the right to adequate counsel, and that, *"[a]bsent an express legislative procedure for vindicating the statutory right to adequate counsel*, this court may fashion an appropriate procedure." 310 Or at 185 (emphasis added). Emphasizing the importance of finality in termination cases, the court noted that "a procedure that allows a terminated parent to make a claim of inadequate counsel only after all direct statutory appeals have been exhausted would only further delay the finality of the termination decisions." *Id.* at 187. Because of that concern and in the absence of statutes prohibiting it, the court concluded that challenges to the adequacy of appointed trial counsel in termination proceedings were reviewable on direct appeal, notwithstanding the lack of preservation. *Id.* at 184 n 9 (noting that, "[b]ecause of the important timeliness considerations," the general rule that appellate courts will not consider error that has not been preserved at trial "need not be strictly applied to the issue of appointed trial counsel's adequacy in a parental rights termination proceeding"). The court also determined that the standard of adequacy required was one that ensured "fundamental fairness" and that the parent making the challenge has the burden of proving that that standard has not been satisfied. *Id.* at 191.[5]

---

[5] The court concluded that the trial court record in *Geist* was sufficient to decide the issue on appeal (and ultimately rejected the mother's claim of inadequacy) but expressed some skepticism about the mechanism for determining the issue in the event the trial court record was not adequate. *See* 310 Or at 192 n 16 ("The parties note a potential problem in direct review of a claim of appointed counsel's inadequacy. They suggest that such claims may involve evidence which trial counsel may have failed to present or arguments which counsel may have failed to make. They argue that it may be impossible to determine from the record on appeal whether the omitted evidence or argument would have made any difference in the outcome of the proceeding. Without necessarily agreeing that a hearing would be constitutionally required, *we note that any determination that relevant evidence or argument was omitted or whether such omission would have made any difference in the outcome is best made by the trial court*." (Emphasis added.)).

The following year, we extended the reasoning in *Geist* to allow direct review of appointed counsel's performance in the context of other dependency proceedings. *State ex rel Juv. Dept. v. Charles/Austin*, 106 Or App 628, 810 P2d 389, *rev den*, 312 Or 150 (1991) (allowing inadequate-assistance-of-counsel claim in appeal of jurisdictional judgment). Those cases provide the foundation for father's argument that we can properly consider unpreserved claims of inadequate assistance of counsel on direct review of juvenile dependency judgments.

The problem with father's reasoning, however, is that the legal landscape has changed significantly—and dispositively—in the almost 25 years since *Geist* was decided.

As just discussed, a primary rationale for the court's decision in *Geist* was the absence of a "legislative procedure for vindicating the statutory right to adequate counsel." 310 Or at 185; *see also id.* ("The statutory right to adequate trial counsel may prove illusory if there is no procedure for review of claims of inadequate counsel." (Footnote omitted.)). However, in 2001, the legislature enacted ORS 419B.923, which provides:

"(1)  Except as otherwise provided in this section, on motion and such notice and hearing as the court may direct, *the court may modify or set aside any order or judgment made by it. Reasons for modifying or setting aside an order or judgment include, but are not limited to*:

"(a)  Clerical mistakes in judgments, order or other parts of the record and errors in the order or judgment arising from oversight or omission. These mistakes and errors may be corrected by the court at any time on its own motion or on the motion of a party and after notice as the court orders to all parties who have appeared. During the pendency of an appeal, an order or judgment may be corrected as provided in subsection (7) of this section.

"(b)  Excusable neglect.

"(c)  Newly discovered evidence that by due diligence could not have been discovered in time to present it at the hearing from which the order or judgment is issued.

"\* \* \* \* \*

"(3)   A motion to modify or set aside an order or judgment must be made within a reasonable time except no order or judgment pursuant to ORS 419B.527 [authorizing post-TPR order placing ward in legal custody of agency authorized to consent to adoption and other dispositions] may be set aside or modified during the pendency of a proceeding for the adoption of the ward, nor after a petition for adoption has been granted.

"\* \* \* \* \*

"(7)   *A motion under subsection (1) of this section may be filed with and decided by the trial court during the time an appeal from a judgment is pending before an appellate court.* \* \* \*

"(8)   This section does not limit the inherent power of a court to modify an order or judgment within a reasonable time or the power of a court to set aside an order or judgment for fraud upon the court."

(Emphasis added.) Thus, ORS 419B.923 now provides the statutory procedure for a parent to challenge the adequacy of counsel that was missing in *Geist.* And it does so—appropriately—in the trial court, the forum that both we and the Supreme Court have recognized provides the more efficient means to resolve such claims, which are inherently fact dependent. *See Geist,* 310 Or at 192 n 16; *State ex rel Juv. Dept. v. Kopp,* 180 Or App 566, 578, 43 P3d 1197 (2002).

Father (and the dissent) nonetheless contend that father was not *required* to pursue the remedy under ORS 419B.923 to challenge the adequacy of his trial counsel because there was a similar set-aside statute in effect at the time that *Geist* was decided and because ORS 419B.923 does not offer an *express* legislative procedure to vindicate the statutory right to counsel, as contemplated by *Geist.* Those arguments do not withstand scrutiny.

Although father is correct that ORS 419B.923 derives from a similar statute that was in effect when *Geist* was decided—*viz., former* ORS 419.529(1) (1989), *repealed by*

Or Laws 1993, ch 33, § 373[6]—the court may very well have not considered that statute to be an available remedy because it was part of a scheme that, potentially, made it ineffective in the context of a challenge to a termination of parental rights (TPR) judgment.[7] In any event, the *Geist* court did not mention it. And post-*Geist* developments have made it clear that the set-aside mechanism, now codified at ORS 419B.923, *is* expressly available as a remedy to challenge the adequacy of appointed counsel in juvenile dependency matters.

First, in *Kopp*, we rejected the state's argument that the mother, whose parental rights had been terminated by default, was precluded from moving to set aside the default judgment under *former* ORS 419B.420 (the predecessor to ORS 419B.923(1), *see* 269 Or App at 462 n 6) because ORS 419B.524 denied her standing to do that.[8] 180 Or App at 579.

---

[6] *Former* ORS 419.529(1) (1989) provided, "Except as provided in this section, the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct." It was repealed in the 1993 revision to the juvenile code, Or Laws 1993, ch 33, § 373; however, the substance was retained in *former* ORS 419B.420 (1993), which provided:

"Except as provided in ORS 419B.423 [regarding notice requirements for modification of orders] and ORS 419B.426 [providing limitation on setting aside post-TPR orders], the court may modify or set aside any order made by it upon such notice and with such hearing as the court may direct."

*Former* ORS 419B.420, in turn, was repealed by Or Laws 2001, ch 622, § 57, the legislation that enacted ORS 419B.923.

[7] *Former* ORS 419.529(4) (1989), *repealed by* Or Laws 1993, ch 33, § 73, provided:

"No order pursuant to ORS 419.527(1)(a) [which allowed the court, after entry of an order terminating a parent's rights, to place a child in the legal custody of an agency authorized to consent to the adoption of children] may be set aside or modified during the pendency of a proceeding for the adoption of the child, nor after a petition for adoption has been granted."

And, *former* ORS 419.525(4) (1989), *repealed by* Or Laws 1993, ch 33, § 373, provided:

"Unless there is an appeal from the order terminating the rights of the parent or parents, the order permanently terminates all rights of the parent or parents whose rights are terminated and the parent or parents have no standing to appear as such in any legal proceeding concerning the child."

Those statutes, in substance, continue to exist in some form in current law. *See* ORS 419B.923(3); ORS 419B.524.

[8] ORS 419B.524 provides:

"Unless there is an appeal from the order terminating the rights of the parent or parents, the order permanently terminates all rights of the parent or parents whose rights are terminated and the parent or parents have no standing to appear as such in any legal proceeding concerning the ward."

We concluded that "a construction of ORS 419B.524 that deprives a terminated parent of standing to seek, under *former* ORS 419B.420, an order modifying or setting aside the termination judgment would have [the] effect" of impairing the parent's right under the Due Process Clause to a "fundamentally fair" hearing. *Id.* at 576-77. Thus, we held, ORS 419B.524 must be interpreted to allow such a process.

Next, in *Dept. of Human Services v. A. D. G.*, 260 Or App 525, 317 P3d 950 (2014), we considered the scope of the juvenile court's authority under ORS 419B.923 to set aside a judgment—specifically, in that case, a default judgment terminating the mother's parental rights. Construing ORS 419B.923(1), we observed that the text itself—*viz.*, "the court may modify or set aside *any* order or judgment made by it" (emphasis added)—described the court's authority broadly and did not limit that authority to the nonexclusive list of reasons specifically enumerated in the statute—*viz.*, clerical mistakes, excusable neglect, and newly discovered evidence. *A. D. G.*, 260 Or App at 536.

Our extensive review of the statute's enactment history confirmed that understanding. *Id.* For example, we quoted testimony from one of the workgroup members who had drafted the legislation that the statute "*'expands* the grounds' upon which a parent may move to set aside a juvenile court's order *'beyond* those authorized by ORCP 71, which are limited.'" *Id.* at 539 (quoting Tape Recording, Senate Judiciary Committee, HB 2611, Apr 30, 2011, Tape 115, Side B (statement of Michael Livingston)) (emphasis in *A. D. G.*). Consequently, we concluded that, because the mother had

> "raise[d] a serious question regarding the juvenile court's authority to enter the default judgment [that] she [sought to have] set aside and a colorable claim of a violation of her due process rights by virtue of the juvenile court's interpretation of its authority to enter judgment without allowing her the opportunity to defend against the allegations in the TPR petition at the hearing she attended,"

---

Although the statute was amended in 2003—after *Kopp*—the only change was to replace "child" with "ward," *see* Or Laws 2003, ch 396, § 89; thus, for convenience, we quote the current version of the statute.

there were sufficient grounds for the juvenile court to consider exercising its authority under ORS 419B.923(1) to set aside the default judgment. *Id.* at 539-40. Our holding in *A. D. G.* leaves little doubt that a claim of inadequate assistance of trial counsel—a claim also based on due-process concerns, *Geist*, 310 Or at 189-90—would similarly fall within the court's broad discretionary authority to address under ORS 419B.923(1).

Thus, since the enactment of ORS 419B.923(1), as construed in *A. D. G.*, a crucial predicate of the court's reasoning in *Geist*—that direct appellate review of this type of claim was necessary due to the lack of any other mechanism to vindicate the right to adequate counsel—no longer exists.

Similar reasoning, in fact, led us to reject in *State ex rel Juv. Dept. v. M. U.*, 229 Or App 35, 210 P3d 254 (2009), a mother's argument that we should create a remedy on direct appeal for her claim that her counsel's failure to file a timely appeal of a juvenile court judgment constituted inadequate assistance of counsel. The mother relied on *State ex rel SOSCF v. Hammons*, 169 Or App 589, 593-94, 10 P3d 310 (2000), in which we had concluded, under the reasoning of *Geist*, that it was permissible for us to fashion a remedy on appeal for the inadequate assistance of the mother's appellate counsel for failing to file a timely appeal of a termination judgment, because, as in *Geist*, a legislative procedure to vindicate the mother's statutory right to counsel did not exist. However, by the time that we considered *M. U.*, the legislature had amended ORS 419A.200 to provide such a procedure. Thus, we held, "the decisive factor upon which our authority to craft a remedy in *Hammons* was predicated"—the absence of a legislative procedure to address the asserted inadequacy—was itself absent. *M. U.*, 229 Or App at 43. Accordingly, we concluded that the mother's remedy was governed by the procedure that the legislature had provided—ORS 419A.200(5).[9]

---

[9] The dissent does not address *M. U.* and instead implies that we are thoughtlessly undoing "years" of post-*Geist* precedent, *see* 269 Or App at 473 (Egan, J., dissenting). However, the cases the dissent cites to illustrate that point were all decided *before* the enactment of ORS 419B.923 and certainly well before our decision in *A. D. G.*

So, too, has the legislature provided a procedure for a parent to assert a challenge to the adequacy of his or her appointed trial counsel as a reason for setting aside a permanency judgment made by the juvenile court—that procedure is ORS 419B.923(1). Contrary to father's and the dissent's contention otherwise, given our construction and application of ORS 419B.923(1) in *A. D. G.*, that provision now constitutes an "express legislative procedure" for ensuring that the statutory right to counsel in dependency cases is not illusory. *Geist*, 310 Or at 185. Thus, we are not, as the dissent contends, disregarding the mandate of *Geist*. 269 Or App at 469 (Egan, J., dissenting). Rather, as in *M. U.*, the existence of that legislatively prescribed procedure negates the applicability of *Geist*. Because of the availability of a legislative procedure for vindicating the right to counsel, *Geist's* premise—that direct appeal is necessary—evaporates.[10]

The other rationale supporting the court's decision in *Geist*—the need for "expeditious resolution" of dependency cases, 310 Or at 187[11]—is also best served by requiring a parent to first seek to set aside an erroneous judgment in the trial court. First, a motion to set aside a judgment in the trial court under ORS 419B.923(1) can be filed *at the same time* that an appeal from the judgment is pending in this court. ORS 419B.923(7). Thus, even if, as father points out, trial counsel's alleged inadequacy does not surface until appellate counsel is appointed, ORS 419B.923(7) provides for that contingency by allowing a motion to set aside to be filed in the juvenile court during the pendency of an appeal. And, that motion need not unnecessarily delay appellate review. ORS 419B.923(7); ORAP 2.22(2)(b)

---

[10] As even Judge Rossman advocated in his concurrence to our opinion in *Geist* (which the dissent quotes at length, *see* 269 Or App at 470-71 (Egan, J., dissenting)), hearing parents' inadequate-assistance-of-counsel claims on direct appeal was "the only reasonable alternative"—given the nature of the right at stake—*"until the legislature provides a better plan." State ex rel Juv. Dept. v. Geist,* 97 Or App 10, 22-23 n 2, 775 P2d 843 (1989), *aff'd on other grounds,* 310 Or 176, 796 P2d 1193 (1990) (Rossman, J., concurring) (emphasis in original). The legislature has now provided that "better plan."

[11] The court observed, "Any delay in achieving finality in a termination case adversely affects the rights of all the parties. * * * Whether or not the eventual result is termination, protracted litigation extends uncertainty in the child(ren)'s life." *Geist,* 310 Or at 186-87 (emphasis added). The same can be said in all dependency cases.

(allowing appeal to be held in abeyance, or to go forward, pending disposition of a motion filed in the juvenile court under ORS 419B.923). Moreover, the remedy provided by ORS 419B.923 does not, as the Supreme Court was concerned in *Geist*, "allow a * * * parent to make a claim of inadequate counsel only after all direct statutory appeals [are] exhausted." *Id.* at 187.[12]

Second, allowing a challenge to the adequacy of counsel on direct appeal—as opposed to first pursuing that relief in the trial court—will likely *extend* the litigation rather than shorten it. That is because such challenges turn on factual questions, questions that the trial court is better equipped to resolve because it, unlike the appellate court, already has mechanisms in place to receive and evaluate evidence.[13] The Supreme Court recognized as much in *Geist*. In a lengthy footnote—some of which is set out at 269 Or App at 459 n 5—the court indicated its view that those issues generally are best resolved at the trial level. *See* 310 Or at 192 n 16 ("[A]ny determination that relevant evidence or argument was omitted or whether such omission would have made any difference in the outcome is best made by the trial court."). As the court discussed, the state had proposed a procedure whereby, after settlement of the transcript on appeal, appellate counsel would have a set time

---

[12] Presumably, the court was referring to the statutory post-conviction review procedure, ORS 138.510 to 138.686, under which a convicted defendant may collaterally challenge his or her conviction on the ground that he or she received inadequate assistance of counsel at trial or on appeal.

[13] The dissent complains that our decision will extend, rather than shorten, litigation because it will require "an extra step *in all cases* before we can review a parent's inadequate-assistance-of-counsel claim." 269 Or App at 478 (Egan, J., dissenting) (emphasis in original). To the contrary, utilization of the ORS 419B.923 set-aside process may, in some cases, *eliminate entirely* one step of the litigation process—that is, the need for an appeal.

Moreover, we do not, contrary to the dissent's assertion, advance the proposition that, if these claims were to be heard in the first instance on direct appeal, there would *never* be a case in which the factual record would be sufficient for appellate review (indeed, *Geist* was such a case)—only that they will be rare and that this is not such a case. The dissent, on the other hand, by contending that the factual record in this case is adequate, would, in essence, establish a rule that an attorney is *per se* constitutionally inadequate if he or she fails to appear for a hearing, regardless of the reasons for that absence or, contrary to *Geist*, 310 Or at 189-90, whether the parent was prejudiced as a result. That position is untenable.

within which to move this court for a remand to the juvenile court to take further evidence on the question of adequacy of trial counsel; presumably, opposing counsel would then have time to respond; and, if we agreed that remand was necessary, we could send the case back to the trial court for fact finding. *Id.* Even if we did not adopt that procedure, we presumably would need to establish *some* method to obtain trial court fact finding in those cases. Requiring, instead, that the parent seek to resolve the asserted inadequacy of counsel in the trial court under ORS 419B.923(1) would eliminate the unnecessary step of a remand—after (if, for example, a plan similar to the one that the state proposed in *Geist* were to be adopted) the further step of additional briefing and decision making on whether a remand is needed. If the parent's ORS 419B.923(1) motion is denied by the juvenile court, the parent would then be free to appeal that denial, and the issue would be before us with a properly developed factual record.

We made a similar observation in *Kopp.* In concluding that a parent must be permitted to seek an order setting aside a default termination judgment under the predecessor to ORS 419B.923, we explained:

"In particular, where a terminated parent has asserted a defect in the proceeding leading to termination, a hearing under [*former* ORS 419B.420]—*in which, for example, a parent can develop a factual record relating to the asserted defect*—is best suited for providing the parent with the required 'opportunity to be heard at a meaningful time and in a meaningful manner.' *See* [*Geist,* 310 Or at 189-90] (stating that standard as the 'essence of fundamental fairness'). A proceeding in juvenile court under *former* ORS 419B.420 is also *likely to be the most expeditious mechanism for resolving any asserted challenge*—including, if the court determines that modification or set-aside is warranted, the expeditious scheduling and hearing of whatever further proceedings are required. By comparison, an appeal—particularly one resulting in the reversal of the termination judgment and further proceedings below—may result in a much greater delay in final resolution of the matter."

*Kopp,* 180 Or App at 578-79 (emphasis added). There is nothing to be gained—and much to be sacrificed—by allowing

claims of inadequate assistance of counsel to be made in the first instance on direct appeal when the legislature has provided, in ORS 419B.923(1), a more expeditious and efficient method to resolve them.

This case illustrates the problem. Because we do not have a factual record concerning counsel's reason for not attending the hearing and the actions that counsel would or should have taken had he attended it, we have no basis to conclude that counsel failed to "exercise professional skill and judgment" on father's behalf, *Geist*, 310 Or at 190, and that that failure prejudiced father's case, *id.* at 191 (parent challenging trial counsel's inadequacy must produce "some credible evidence" demonstrating that the proceeding was not fundamentally fair).

In sum, the premises upon which *Geist* is grounded have been negated by the availability of ORS 419B.923 as a mechanism for a parent in a dependency action to challenge the adequacy of his or her trial counsel in the juvenile court. In light of those developments—as well as the recognized need for expeditious resolution of these cases—we conclude that, to preserve a claim of inadequate assistance of appointed trial counsel, a parent in a dependency proceeding must first seek to resolve that issue in the juvenile court by moving, under ORS 419B.923(1), for the court to modify or set aside the judgment or order to which the claim relates.[14] Because father failed to preserve his claim of inadequate assistance of counsel in this case, we affirm the permanency judgments at issue on appeal.

Affirmed.

---

[14] The dissent argues that we thus are eliminating the "fundamental fairness" standard for evaluating inadequate-assistance-of-counsel claims. 269 Or App at 480-81 (Egan, J., dissenting) ("Under the majority view, if the parent's motion to set aside the judgment is denied, the parent's appeal of that denial would not be reviewed for fundamental fairness—as it would be in a direct appeal of an inadequate-assistance-of-counsel claim—but instead would be reviewed under a far more deferential abuse of discretion standard."). The dissent is wrong. The "abuse of discretion" *standard of review* does not allow us to ignore the "fundamental fairness" *legal standard* established by the Supreme Court in *Geist*. In other words, it would not be within the trial court's range of permissible discretion to deny a parent the fundamental fairness guaranteed by *Geist*, and we would be obliged to so hold if confronted with such a circumstance.

**EGAN, J.,** dissenting.

Without due regard for the mandate of Supreme Court precedent that has existed for a quarter century, *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 796 P2d 1193 (1990) (*Geist II*), the majority declines to consider father's inadequate-assistance-of-counsel claim on direct appeal. I disagree that the direct-appeal remedy available under *Geist* is unavailable to father and I respectfully dissent.

The majority today repeats the mistakes we made in *State ex rel Juv. Dept. v. Geist*, 97 Or App 10, 775 P2d 843 (1989) (*Geist I*), *aff'd on other grounds*, 310 Or 176, 796 P2d 1193 (1990). I begin with a discussion of our decision in that case. In *Geist I*, the juvenile court terminated the mother's parental rights. The mother appealed to this court, asserting—for the first time on appeal—that her appointed trial counsel had been inadequate and that she had been denied due process. *Id.* at 15. At that time, the question was one of first impression. *Id.* at 16.

We concluded that we could not review the mother's claim because, although the mother was entitled to "competent and effective counsel," the legislature had *"not provided a specific procedure or forum* for determining whether a parent has been afforded effective assistance of counsel." *Id.* at 17 (emphasis added). We noted that the procedure that the mother advocated—our direct review of her inadequate-assistance-of-counsel claim—created some difficulties. For example, we observed that the trial record was not created for the purpose of making any determinations about the adequacy of the mother's counsel. We explained, "No facts *about counsel* were developed in the adversarial way that lies at the heart of judicial factfinding. The record does not disclose, *and could not be expected to disclose*, anything about counsel's conduct except what it shows about the issue raised in mother's defense." *Id.* at 18 (emphasis in original). Finally, we concluded that direct appeal was *"not the appropriate forum"* for the mother to assert her claim. *Id.* (emphasis added). Indeed, we specifically noted that "[t]he *legislature has not created a special forum, as it has in criminal law matters (ORS 138.510-ORS 138.680), and there is no source*

*from which we may derive the authority to create one." Id.* (emphasis added).

Judge Rossman, in a trenchant concurrence, stated that he was "at a loss" with regard to the majority's rationale, because, in his view, neither due process nor a lack of a specific procedure barred our consideration of the mother's inadequate-assistance-of-counsel claim. *Id.* at 21 (Rossman, J., concurring). Judge Rossman further noted that, despite the majority's identification of two main "legitimate institutional concerns about hearing claims of ineffective counsel on direct appeal," namely lack of preservation and the potential inadequate development of the trial court record, those concerns had not arisen in that case. *Id.* at 22, 22 n 2 (Rossman, J., concurring). Judge Rossman summarized the majority's arguments:

> "[A]pplying the rule that matters subject to review on direct appeal must be 'raised or waived' will create a host of problems. For example, trial counsel will be required to defend the termination case while simultaneously making a record regarding his adequacy, and he would invariably be required to file a notice of appeal in order to preserve any existing error. Second, [the majority] contends that reviewing adequacy of counsel on the record might be inadequate for constitutional purposes. Thus, remand would be required, causing intolerable delay in the termination process."

*Id.* at 22 n 2 (Rossman, J., concurring). He then rejected those arguments, explaining:

> "[T]he problems [the majority] points out are not totally insoluble. For one thing, raise it or waive it is not an invariable rule. Where important considerations of public policy are encountered ***, [the court] has the duty to apply the law which is dictated by that policy. If we apply that [public policy] exception in cases involving ineffectiveness of counsel claims ***, most of the dilemmas pointed out by the majority will disappear.
>
> "The fact that many termination cases would require remand remains a problem. However, *remand would not be necessary in all cases,* and the state has offered a reasonably expeditious procedure for handling such cases when they arise. Given the nature of parents' right to effective counsel, and *until the legislature provides a better plan,*

hearing such claims on direct appeal seems the only reasonable alternative."

*Id.* at 23 n 2 (Rossman, J., concurring) (internal quotation marks and citations omitted; first emphasis added; second emphasis in original).

Thus, the key issues in *Geist* were the same as those presented by the majority today: preservation; expeditious resolution; concerns about the development of the record; and due process. It is also clear that, 25 years ago, we had the opportunity to rule on those issues in *Geist I.* As I explain in more detail below, the Oregon Supreme Court did not agree with our decision in *Geist I* and took an entirely different path. The Supreme Court adopted a procedure that was in harmony with Judge Rossman's approach. Because the majority's reasoning so similarly echoes our opinion in *Geist I,* which the Supreme Court later rejected, I conclude that the majority errs in its decision today.

The Supreme Court's decision in *Geist II* sanctioned inadequate-assistance-of-counsel claims on direct appeal. *Geist II,* 310 Or at 179. The Supreme Court began by concluding that the legislature intended a statutory right to counsel to include a right to adequate counsel, *id.* at 185, and that "the state must give [the mother] a procedure whereby she may challenge her appointed trial counsel's adequacy," *id.* The court then reasoned that

"[t]he statutory right to adequate trial counsel may prove illusory if there is no procedure for review of claims of inadequate counsel. * * * Absent an express prohibition against challenges of adequacy of appointed counsel, *we do not interpret the legislature's omission of an express procedure as evidencing any legislative intent to preclude such challenges. Absent an express legislative procedure* for vindicating the statutory right to adequate counsel, this court may *fashion an appropriate procedure.*"

*Id.* at 185 (footnotes omitted; emphases added).

The court also held that it was unnecessary for a parent to preserve inadequate-assistance-of-counsel claims that occur at the juvenile court level, specifically recognizing that

"it is *unlikely that any challenge to the adequacy of appointed trial counsel will have been preserved in the circuit court.* It is neither realistic nor reasonable to expect that a parent's trial counsel will have objected at trial that counsel's advocacy was inadequate. Because of the important timeliness considerations discussed below, we conclude that the general rule [requiring preservation] need not be strictly applied to the issue of appointed trial counsel's adequacy in a parental rights termination proceeding."

*Id.* at 184 n 9 (emphasis added). The court next examined the appropriate "procedure" to review such claims, requiring that inadequate-assistance-of-counsel claims must be resolved "as expeditiously as possible, *consistent with due process.*" *Id.* at 186 (emphasis added). Based on those dual exigencies, the court made two important conclusions. First, the court recognized that "a procedure that allows a * * * parent to make a claim of inadequate counsel only after all direct statutory appeals have been exhausted would only further delay the finality of the termination decisions," *id.* at 187, and thus was not an "appropriate procedure," *id.* at 186. Second, the court concluded that, "*absent statutes providing otherwise,* * * * any challenges to the adequacy of appointed trial counsel in [termination] proceedings *must* be reviewed on direct appeal." *Id.* at 187 (emphases added). In short, the *Geist II* court concluded that an appropriate *procedure* for vindication of a parent's right to adequate counsel was expedient, comported with due process, and, therefore, must be asserted and reviewed on direct appeal. *Id.*

The court then examined the appropriate measure of adequacy for review of such claims, setting the standard of "fundamental fairness"—*viz.*, the "opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 190. In challenges to counsel's adequacy, the parent must prove that counsel failed to exercise professional skill and judgment, which prejudiced the parent.[1] *Id.* at 190.

---

[1] The *Geist II* remedy was extended from claims against trial counsel in termination cases to claims against trial counsel in other dependency cases. *State ex rel Juv. Dept. v. Charles/Austin,* 106 Or App 628, 634, 810 P2d 389, *rev den,* 312 Or 150 (1991). The remedy was later extended to include inadequate-assistance-of-counsel claims against appellate counsel as well. *State ex rel SOSCF v. Hammons,* 169 Or App 589, 594, 10 P3d 310 (2000).

The court squarely addressed the potential problem of the adequacy of the record, which did not present a problem in that case. *Id.* at 192 n 16. Because the record in that case *was adequate for review,* the court determined that the mother had not sustained her burden of proving that her attorney was inadequate or that the termination proceeding was not "fundamentally fair." *Id.* at 194. Accordingly, the court affirmed our decision, but rejected our conclusion that such a claim was not susceptible to direct appeal. *Id.*

In the years since the Supreme Court's decision in *Geist II,* we have continued to apply that decision as good law, allowing parents to assert unpreserved inadequate-assistance-of-counsel claims on direct appeal. *See, e.g., State ex rel SOSCF v. Thomas,* 170 Or App 383, 394-95, 12 P3d 537 (2000); *State ex rel SOSCF v. Rogers,* 162 Or App 437, 440, 986 P2d 726 (1999), *rev den,* 329 Or 607 (2000); *State ex rel Juv. Dept. v. Charles/Austin,* 106 Or App 628, 634, 810 P2d 389, *rev den,* 312 Or 150 (1991); *State ex rel Juv. Dept. v. Griffith,* 106 Or App 407, 410, 807 P2d 340 (1991).[2]

However, the majority maintains that, "in light of the enactment of ORS 419B.923 and our cases construing that statute," the "legal landscape has changed" so "significantly" that "father's claim as to the inadequacy of his appointed trial counsel must be made in the first instance in the juvenile court." 269 Or App at 458-60. The majority bases its decision primarily on the 2001 enactment of ORS 419B.923 and our later construction of that statute in *Dept. of Human Services v. A. D. G.,* 260 Or App 525, 539, 317 P3d 950 (2014), reasoning that ORS 419B.923 created an express remedy. 269 Or App at 461.

However, the juvenile code has consistently contained a similar set-aside statute, and to the point at issue here, such a statute existed even before we decided *Geist I. See, e.g., former* ORS 419.529 (1989), *repealed by* Or Laws 1993, ch 33, § 373; *former* ORS 419B.420 (1993), *repealed by* Or Laws 2001, ch 622, § 57.

---

[2] We have further applied the *Geist II* methodology to "fashion" a remedy in situations where no legislatively created remedy exists and one is needed to vindicate a parent's due process rights. *See, e.g., Hammons,* 169 Or App at 594; *State ex rel Juv. Dept. v. Kopp,* 180 Or App 566, 578, 43 P3d 1197 (2002).

*Former* ORS 419.529(1) was in effect at the time that *Geist II* was decided, and it allowed the court broad authority to set aside its orders: "Except as provided in this section, the court may modify or set aside *any order* made by it upon such notice and with such hearing as the court may direct." (Emphasis added.) As indicated, that statute was repealed in 1993. Or Laws 1993, ch 33, § 373.

However, the court's broad authority to modify or set aside any order was retained by the statute that replaced it, *former* ORS 419B.420 (1993), which provided, in relevant part, "[T]he court may modify or set aside *any order* made by it upon such notice and with such hearing as the court may direct." That statute was also repealed, Or Laws 2001, ch 622, § 57, and replaced with ORS 419B.923 in 2001, Or Laws 2001, ch 622, § 33.

ORS 419B.923(1) states that, "on motion and such notice and hearing as the court may direct, the court may modify or set aside *any order* or judgment made by it. Reasons for modifying or setting aside an order or judgment include, but are not limited to" clerical mistakes or errors, excusable neglect, or newly discovered evidence. (Emphasis added.) The only distinction between the set-aside statute that existed when *Geist II* was decided and the present statute, is that the present statute gives examples of "any order" that may be set aside. That is to say, the scope of a court's authority to set aside, under the present statute, is identical to the scope of authority that courts had at the time *Geist II* was decided. Thus, it is apparent, in light of the plain text of each variant of the set-aside statutes, that the juvenile court has—since before *Geist II* was decided—retained broad authority to modify or set aside any order notwithstanding the legislative changes over the years.

Nevertheless, the majority relies on *State ex rel Juv. Dept. v. Kopp*, 180 Or App 566, 43 P3d 1197 (2002), and *A. D. G.*, 260 Or App 525, to determine that "post-*Geist* developments have made it clear that the set-aside mechanism * * * *is* expressly available as a remedy to challenge the adequacy of appointed counsel in juvenile dependency matters," 269 Or App at 462 (emphasis in original), despite the fact that neither we nor the Oregon Supreme Court

mentioned or considered the set-aside statute in existence at the time the *Geist* cases were decided as an "express" remedy. To reach the conclusion that ORS 419B.923 is now an "express" remedy that makes the *Geist* remedy unavailable to father in this case, the majority relies on our interpretation of ORS 419B.923 as broad in *A. D. G.* 269 Or App at 463. Yet, as noted, the scope of a trial court's authority has not changed since *Geist II* was decided. The court had broad authority before *Geist II*, and it retains broad authority now. However, as is implicit in the Supreme Court's holding in *Geist II*, that authority does not constitute an "express" remedy. 310 Or at 185 (concluding that, despite the existence of a set-aside statute, no express remedy existed).

Thus, I turn to examine *A. D. G.* In that case, we analyzed whether the juvenile court had the authority to set aside a default judgment under ORS 419B.923. 260 Or App at 534. After the Department of Human Services (DHS) petitioned to terminate the mother's parental rights, the mother missed an initial hearing on the petition, but was present at the *prima facie* hearing and attempted to participate in that hearing. *Id.* at 527-29. The mother sat in the audience portion of the courtroom while DHS presented its *prima facie* case; the mother ultimately left the courtroom. *Id.* at 530. The mother attempted to appeal that judgment, but that appeal was dismissed. *Id.* at 531. The mother then made a motion at the trial court level to set aside the "default termination judgment" under ORS 419B.923. *A. D. G.*, 260 Or App at 532. The court denied that motion.

On appeal, we examined whether the juvenile court had the authority to set aside the judgment under ORS 419B.923(1). We concluded that the plain text of that statute—specifically, the statute's use of the phrasing "include, but are not limited to"—did not limit the broad discretionary authority that the statute gave to a juvenile court to modify or set aside judgments to the three examples enumerated in the statute; that conclusion was supported by the legislative history of ORS 419B.923. *A. D. G.*, 260 Or App at 536-37. Indeed, in light of the legislative history, we concluded that, although ORS 419B.923 was "a substantial reworking of both *former* ORS 419B.420 (1993) *** and ORCP 71," ORS 419B.923 "tracked the broad language that

was already in *former* ORS 419B.420" and did not include the "closed universe of potential grounds for relief from a judgment listed in ORCP 71 A and B." *A. D. G.*, 260 Or App at 538-39. Indeed, we specifically acknowledged that the text of ORS 419B.923 came from *former* ORS 419B.420. *A. D. G.*, 260 Or App at 539.[3]

We then analyzed whether the juvenile court had the authority to issue a default judgment under ORS 419B.819(7), when the mother was present at the hearing and attempted to participate. We concluded that the juvenile court lacked the authority to enter a default judgment and, based on that legal error, concluded that the juvenile court *abused its discretion* when it denied the mother's ORS 419B.923 motion. *A. D. G.*, 260 Or App at 534. Contrary to the majority's assertion, *A. D. G.* had no effect on the scope of ORS 419B.923. The set-aside statute was broad before *Geist* was decided and remains similarly broad today.

In addition to *A. D. G.*, the majority also relies on *Kopp. Kopp* did not involve a direct-appeal challenge to the adequacy of counsel. Instead, that case centered on whether the parent had standing to move to set aside a judgment after that parent's rights had been terminated. Thus, in *Kopp*, we examined and interpreted ORS 419B.524. We were concerned that an interpretation of ORS 419B.524 that divested the parent of standing to set aside a default termination judgment would violate the parent's due process rights. We began by examining *Geist II*, noting that, before the Supreme Court had decided the case, we had previously concluded that "the parent could not claim inadequate assistance of trial counsel on appeal, because the legislature had

---

[3] The majority emphasizes testimony in the legislative history from a work-group member who stated that "the statute '*expands* the grounds' upon which a parent may move to set aside a juvenile court's order '*beyond* those authorized by ORCP 71, which are limited.'" 269 Or App at 463 (quoting *A. D. G.*, 260 Or App at 539) (emphasis in *A. D. G.*). The majority mischaracterizes that testimony, implying that that expansion refers to some heretofore undefined limit of the prior set-aside statutes. However, the testimony clearly indicates that the legislature intended to enact a statute that granted a broad authority to the trial court to set aside judgments—that was not limited to the closed universe of potential grounds for relief that exists in ORCP 71—but that utilized wording and intent similar to that of the previous set-aside statutes in the juvenile code. *A. D. G.*, 260 Or App at 545 (quoting Tape Recording, Senate Judiciary Committee, HB 2611, Apr 30, 2001, Tape 115, Side B (statement of Michael Livingston)).

not created 'a special forum' for such a claim, analogous to proceedings for post-conviction relief in criminal matters." *Kopp*, 180 Or App at 577 (discussing *Geist I*, 97 Or App 10). We ultimately concluded that ORS 419B.524 must be interpreted so that it did not deprive a parent of *standing* to utilize *former* ORS 419B.420—the set-aside statute in effect at the time—to set aside or modify a default judgment terminating a parent's rights based on inadequate notice. *Kopp*, 180 Or App at 578-79. In so concluding, we noted that the Supreme Court's failure to consider *former* ORS 419B.420, in *Geist II*, was *attributable to the unlikelihood that an inadequate-assistance-of-counsel claim would arise at the trial court level*:

> "The *Geist* [*II*] court did not expressly consider the role of * * * *former* ORS 419B.420 in achieving an expeditious yet procedurally adequate and fair parental rights termination proceeding. In the context of the issue presented in that case, [*i.e.*, inadequate assistance of *trial* counsel,] that is not surprising. * * * As the *Geist* [*II*] court itself noted, it *is unlikely that a challenge to the adequacy of appointed trial counsel will arise in the trial court*."

*Kopp*, 180 Or App at 578 (emphasis added).

As support for our conclusion that the correct—and constitutional—interpretation of ORS 419B.524 required that that statute be interpreted to allow a parent, whose rights had been terminated, *standing* to move to modify or set aside the termination judgment under *former* ORS 419B.420, we explained in that context:

> "Nevertheless, we conclude that, consistently with the [due process] principles set out in *Geist* [*II*], ORS 419B.524 must be interpreted to permit a terminated parent to seek, under *former* ORS 419B.420, an order modifying or setting aside the termination judgment. In particular, where a terminated parent has asserted a defect in the proceeding leading to termination, a hearing under [*former* ORS 419B.420]—in which, for example, a parent can develop a factual record relating to the asserted defect—is best suited for providing the parent with the required 'opportunity to be heard at a meaningful time and in a meaningful manner.' *See id.* at 189-90 (stating that standard as the 'essence of fundamental fairness'). A proceeding in juvenile court under *former* ORS 419B.420 is also likely to be the

> most expeditious mechanism for resolving any asserted challenge—including, if the court determines that modification or set-aside is warranted, the expeditious scheduling and hearing of whatever further proceedings are required. By comparison, an appeal—particularly one resulting in the reversal of the termination judgment and further proceedings below—may result in a much greater delay in final resolution of the matter. Moreover, some errors in trial court proceedings could be asserted only in a set-aside proceeding, either because they were not detected within the time limit for filing a notice of appeal or otherwise could not be raised on direct appeal from a termination judgment. It would be especially troublesome if—unlike other civil litigants—parents facing termination of their parental rights had no access to the courts for the purpose of remedying such errors [due to a lack of standing under *former* ORS 419B.524]."

*Kopp*, 180 Or App at 578-79 (footnote and emphasis omitted). Although set out in the context of a case relating to standing, that language shows that we once again highlighted the dual tensions present in dependency cases that were identified in *Geist*: the need for expeditious administration of termination proceedings that also comported with the parent's due process rights. *Kopp*, 180 Or App at 578-79.

The majority relies on that language to support the conclusion that the trial court can review inadequate-assistance-of-counsel claims more expeditiously than we can on direct appeal and therefore direct appeal should no longer be available to parents. 269 Or App at 465-66. The new process created by the majority decision is more cumbersome because it requires an extra step *in all cases* before we can review a parent's inadequate-assistance-of-counsel claim. That is true even if, as in this case, the record is adequate for review without further development at the trial court level. *See Geist II*, 310 Or at 187 (rejecting "procedures allowing further litigation or collateral attacks" as appropriate remedies because those remedies would "delay the finality of the termination order," and adopting the direct-appeal remedy at issue in this case).

Thus, it appears that, under the majority's reasoning, the fundamental fairness determination has become

bound up with the preliminary determination we must make in a direct-appeal proceeding of whether the record is adequate for review. *See* 269 Or App at 466 ("[A]llowing a challenge to the adequacy of counsel on direct appeal—as opposed to first pursuing that relief in the trial court—will likely *extend* the litigation rather than shorten it * * * because such challenges turn on factual questions[.]" (Emphasis in original.)); 269 Or App at 468 ("This case illustrates the problem. Because we do not have a *factual record concerning counsel's reason for not attending the hearing* and the actions that counsel would or should have taken had he attended it, *we have no basis to conclude that counsel failed to 'exercise professional skill and judgment' on father's behalf * * * and that that failure prejudiced father's case.*" (Emphasis added.)). The majority asserts that, in the absence of a factual record *specifically pertaining to trial counsel's adequacy,* there will never be a case in which we can review—on direct appeal—whether counsel was adequate. That assertion is wholly inaccurate. *See, e.g., Geist II,* 310 Or at 176 (concluding, based on record developed at termination trial, that counsel was adequate); *Geist I,* 97 Or App at 22, 23 n 2 (Rossman, J., concurring) ("[T]he majority has unearthed legitimate institutional concerns about hearing claims of ineffective counsel on direct appeal. * * * However, they neither arise in mother's case nor present the parade of horrors that haunts the majority."; noting that, although the problem of adequate development of the record exists, "remand would not be necessary in all cases); *Thomas,* 170 Or App at 394-95 (concluding that the father's counsel was adequate after reviewing the record developed at the trial court level).

I would come to the opposite conclusion. Here, father's attorney was inexplicably absent. We have all the facts we need to decide whether father's counsel was adequate. Moreover, given that father was present, provided information to the court that went *directly to the contested issues addressed at the permanency hearing,* and his attorney was inexplicably absent and therefore could not exercise any professional skill and judgment, the reasons behind the attorney's inexplicable absence do not have any bearing on whether father was prejudiced by his attorney's failure to appear, act, or exercise *any* judgment at the hearing. *See,*

*e.g., Geist II,* 310 Or at 192 n 16 (concluding that a hearing to further develop the record is appropriate "only when a parent raises a substantial question concerning issues other than those adjudicated at the termination proceeding" (emphasis omitted)).

Experience instructs that a parent who wishes to assert an inadequate-assistance-of-counsel claim against the parent's trial attorney may face practical obstacles in preserving and asserting that claim. We and the Supreme Court have acknowledged as much in *Geist II* and *Kopp*. *Geist II,* 310 Or at 187; *Kopp,* 180 Or App at 578-79. For example, when the record provides no indication of whether the parent continued to be represented by the same trial attorney (whose adequacy the parent seeks to challenge), it would be unreasonable to require that the parent assert his or her challenge at the trial level because that challenge presumably would be made *by the attorney whose adequacy was being challenged.*

Further, the majority's decision inserts several other significant practical obstacles in a parent's path. First, the majority's decision does not address the problem of *who* will assert that claim at the trial level on the parent's behalf. *See, e.g.,* 269 Or App at 465-66 ("[E]ven if * * * trial counsel's alleged inadequacy does not surface until appellate counsel is appointed, ORS 419B.923(7) provides for that contingency by allowing a motion to set aside *to be filed* in the juvenile court during the pendency of an appeal." (Emphasis added.)). Must the parent request that his or her attorney first be removed at trial, so that a new attorney could be appointed to assert the inadequate-assistance-of-counsel claim at the trial level? What are the practical ramifications if the trial court denies the parent's motion to remove the attorney? Specifically, who will assert the inadequate-assistance-of-counsel claim at the trial level on the parent's behalf? Would the parent then be required to make a *pro se* motion to the court?

Second, assuming that the parent does find a way to seek a motion to set aside the judgment based on the inadequate-assistance-of-counsel claim, what is the effect of a denial of that motion? Under the majority view, if the

parent's motion to set aside the judgment is denied, the parent's appeal of that denial would not be reviewed for fundamental fairness—as it would be in a direct appeal of an inadequate-assistance-of-counsel claim—but instead would be reviewed under a far more deferential abuse-of-discretion standard. *A. D. G.*, 260 Or App at 534.

A far more sensible approach would be to continue to allow inadequate-assistance-of-counsel claims on direct appeal so that the parent has a meaningful opportunity to assert those claims. Indeed, a parent's first practical opportunity to assert an inadequate-assistance-of-counsel claim may be at the appellate level, when the parent is first appointed appellate counsel.

By focusing on expediency, the majority loses sight of the need to protect the parent's due process rights. When it concludes that its newly created requirement for inadequate-assistance-of-counsel claims "would eliminate the unnecessary step of a remand" (if we determined that the record on appeal was inadequate for purposes of review), the majority concludes that, by requiring parents to make a preliminary ORS 419B.923 motion for all inadequate-assistance-of-counsel claims in dependency cases, litigation will be shortened. 269 Or App 467. That is because we will no longer be required to determine the adequacy of the record on appeal from the parties' briefing and the record—and, if necessary, remand for a trial court hearing to develop the record in cases that we have determined that the record was inadequate. In my opinion, by its decision today, the majority—not the legislature—has entirely changed the landscape of the law, altering where the claim is initially asserted, what standards are applied to initially evaluate the claim, and the standard of review that will apply in reviewing appeals of trial court decisions of ORS 419B.923 motions based on inadequate assistance of counsel. The majority's decision to insert a new requirement—based on a faulty determination that the existence of a 2001 statute, which we interpreted as "broad" some 13 years after enactment—does away with the remedy created in *Geist II* for review of inadequate-assistance-of-counsel claims on direct appeal and effectively removes the carefully

crafted standard of "fundamental fairness" from review of all inadequate-assistance-of-counsel claims in dependency cases.

Indeed, the majority states that "[t]here is *nothing to be gained*—and much to be sacrificed—by allowing claims of inadequate assistance of counsel to be made in the first instance on direct appeal when the legislature has provided, in ORS 419B.923(1), a more expeditious and efficient method to resolve them." 269 Or App at 467-68 (emphasis added). I disagree. Expediency is not the only concern; it must be balanced against the magnitude of parents' due process rights.

In sum, although the juvenile court's broad statutory authority to modify or set aside any order has undergone minor changes since *Geist II* was decided, there is no indication that the legislature's actions in the interim have had any effect on the *scope* of the set-aside statutes. Therefore, if, under *Geist II*, the set-aside statutes were not a barrier to the court implementing a direct-review remedy of inadequate-assistance-of-counsel challenges that did not require preservation, there is nothing about the changes in the statutes since *Geist II* was decided—including the recent construction in *A. D. G.* that ORS 419B.923 is "broad"—that provides any support for the majority's conclusion that that statute precludes a parent from utilizing the remedy created in *Geist II*.

Accordingly, I respectfully dissent.