Argued and submitted September 4, 2014, affirmed April 8, 2015

In the Matter of A. L. M. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. U. L.,
*Appellant.*

Marion County Circuit Court
J120389;
Petition Number 081513LUK1;
A156348

347 P3d 364

Shannon Flowers, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Erin Galli, Senior Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Inge D. Wells, Assistant Attorney-in-Charge.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

Mother appeals a judgment terminating her parental rights to her daughter, A. Mother argues that the juvenile court committed plain error by continuing the appointment of a guardian *ad litem* (GAL) after mother had been found competent in separate criminal proceedings. Mother also contends that she received inadequate assistance of counsel when her attorney failed to object to the juvenile court's continuation of the GAL appointment. We conclude that the juvenile court did not commit plain error and that mother's challenge to the adequacy of her counsel, raised for the first time in this appeal, is unreviewable in light of our recent decision in *Dept. of Human Services v. T. L.*, 269 Or App 454, 344 P3d 1123 (2015). Finally, mother argues that her termination proceedings were fundamentally unfair. That argument is based wholly on mother's arguments regarding the GAL appointment and the adequacy of her counsel. Because those arguments are unavailing, mother's challenge to the fairness of the proceeding also fails. Accordingly, we affirm the juvenile court's judgment.

Our review is *de novo*. ORS 19.415(3)(a) ("Upon an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals shall try the cause anew upon the record[.]")

The facts are undisputed. In July 2012, Stayton police received a call reporting that mother was "acting strangely" and pushing a stroller containing her three-year-old daughter, A, into the side of a fireworks tent. The report noted that mother seemed unaware of A's discomfort and crying. Police responded and observed that mother was "talk[ing] in circles" and "not mak[ing] sense." Upon visiting mother's home, police became concerned that there was little food in the house and contacted the Department of Human Services (DHS). A was removed and placed in nonrelative foster care. The juvenile court entered a judgment of jurisdiction as to A in October 2012.

Mother has a history of mental illness. She has been diagnosed with bipolar disorder and borderline schizophrenia, and she has voluntarily submitted herself for

psychiatric hospitalizations several times in the last 13 years. Mother was first hospitalized in 2002, during which time she worked with providers to find psychiatric medication that would improve her condition. She became pregnant with A in 2008; based on a doctor's recommendation, mother stopped taking psychiatric medication during her pregnancy. After giving birth to A in June 2009, mother did not resume taking her medication.

Following A's removal, mother was hospitalized in Salem Hospital's psychiatric unit for about three weeks, initially on an involuntary "hold" and eventually on a voluntary basis. Hospital notes indicate that mother seemed "disorganized and disoriented," "at times appear[ed] to attend to internal stimuli," and experienced "persecutory delusions." Mother was diagnosed with "[p]sychotic disorder not otherwise specified (NOS)."

In September 2012, DHS facilitated mother's participation in a psychological evaluation with Dr. Sweet. Sweet described mother's "thinking" and "presentation" as "very disorganized" and noted that she "couldn't stay on track, she couldn't respond to [his] questions," and that she "would try to take over the conversation" and instead, "talk about other things." Sweet diagnosed mother with psychotic disorder NOS and "Borderline Intellectual Functioning (Possible Deterioration of Cognitive Functioning)."

At some point, mother left the hospital. She was arrested and charged with harassment in March 2013, following an incident in which she grabbed and pushed a DHS caseworker. In August 2013, DHS filed a petition to terminate mother's parental rights to A on grounds of unfitness. Over the course of five days in September and October 2013, mother was arrested twice more on charges of improper use of an emergency reporting system (after mother called 9-1-1 from the Marion County Jail, claiming to need medical attention) and fourth-degree assault (following an altercation in which she shoved, grabbed, and scratched her mother).

On October 9, 2013, the circuit court found mother unfit to proceed in her criminal matters and ordered her committed to the Oregon State Hospital (OSH). OSH staff concluded that schizophrenia, rather than psychotic

disorder NOS, was the most accurate diagnosis. Mother was prescribed antipsychotic and mood-stabilizing medications.

In the termination proceeding, DHS requested that the juvenile court appoint a GAL for mother in light of the circuit court's determination that mother was unfit to proceed in her criminal cases. At a hearing on October 25, mother's attorney objected to the appointment of a GAL, as did mother (testifying by telephone). The juvenile court granted DHS's motion and appointed a GAL.

By December 2013, mother had "stabilized" at OSH to the point that she was "able to hold conversations." On December 20, the juvenile court held a hearing on whether to continue the GAL appointment for mother. DHS requested that the appointment continue, and mother's attorney did not object. The juvenile court ruled that the GAL appointment would continue.

Trial occurred in February 2014. At the trial, mother's treating psychiatrist and an OSH nurse testified that, three days earlier, they had determined that mother was able to aid and assist her attorney and had discharged mother from OSH. A DHS caseworker also acknowledged at trial that mother was "stable" at the time. Mother testified at the trial and appeared to understand the questions that she was asked. During the trial, neither mother nor her attorney raised an objection to the continuing appointment of the GAL. At the end of the trial, the juvenile court terminated mother's parental rights to A. Mother appeals that judgment.

On appeal, mother assigns error to: (1) the juvenile court's continuation of the GAL appointment; (2) the inadequacy of her counsel in failing to object to the continuation of the GAL appointment; and (3) the termination of her parental rights to A.

We first address the continuation of the GAL appointment. Mother argues that the juvenile court was required to terminate the GAL appointment after mother was determined competent to aid and assist in her criminal proceedings. Mother concedes that that issue was not raised below; although she objected to the initial GAL

appointment, at no time did mother or her attorney contend that the appointment should be terminated for any reason. Accordingly, mother requests that we review the continuation of the GAL appointment as "an error of law apparent on the record." ORAP 5.45(1); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991). To qualify for review, such an error must meet three criteria: (1) it must be legal error; (2) it must be apparent, such that the legal point is obvious, and not reasonably in dispute; and (3) it must appear on the face of the record, such that we need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable. *State v. Jury*, 185 Or App 132, 135, 57 P3d 970 (2002) (quoting *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990)) (internal quotation marks omitted). But even if an error meets those criteria, we must also exercise our discretion whether "to consider or not to consider the error." *Ailes*, 312 Or at 382. If we choose to consider the error, we must "articulate [our] reasons for doing so." *Id.*

Mother argues that the juvenile court's continuation of the GAL appointment was plain error under ORS 419B.237(2), which provides:

"A party to the proceeding or the attorney for the parent for whom a guardian *ad litem* has been appointed may request removal of the guardian *ad litem*. The court:

"(a)  Shall remove the guardian *ad litem* if the court determines that the parent no longer lacks substantial capacity either to understand the nature and consequences of the proceeding or to give direction and assistance to the parent's attorney on decisions the parent must make in the proceeding; or

"(b)  May remove the guardian *ad litem* on other grounds as the court determines appropriate."

Here, mother contends that the juvenile court plainly erred in continuing the appointment of the GAL "after mother had been determined to be competent to proceed" in her criminal case. Mother argues that whether the juvenile court had discretion to continue the appointment is an issue of law, that the error "is readily determined without choosing from competing inferences or looking outside the

record" because "mother's treating psychiatrist and nurse from OSH testified to the court that mother had been determined to be competent to proceed in the criminal matter," and that it was "undisputed" that mother had been determined to be competent to proceed in her criminal matters.

As the state correctly points out, however, the statute does not require the juvenile court to make a *sua sponte* determination as to whether a GAL should be removed. ORS 419B.237(2) states that "a party to the proceeding or the attorney for the parent * * * *may request removal* of the guardian *ad litem*." (Emphasis added.) The language in subsection (a) that the court "[s]hall remove" the GAL if the court makes certain determinations is applicable only after such a "request" has been made of the court. The statute simply does not support mother's contention that, in the absence of any "request" by mother or her attorney, the juvenile court had a *sua sponte* obligation to determine whether the GAL appointment should be terminated. For that reason, the juvenile court did not commit plain error.

Mother's second of assignment of error asserts that the termination of her parental rights must be reversed because she was denied a fundamentally fair proceeding, in violation of her due process rights under the Fourteenth Amendment to the United States Constitution. Mother's due process argument is predicated entirely on her contention that the juvenile court plainly erred by not *sua sponte* terminating the GAL appointment. Because the juvenile court did not plainly err, mother's constitutional challenge necessarily fails.

Mother's third and final assignment of error is that she was deprived of adequate assistance of counsel (and, therefore, a fundamentally fair proceeding) when her attorney failed to object to the continuation of the GAL appointment. Although mother concedes that that issue is unpreserved, she argues that her inadequate-assistance claim may be reviewed for the first time on appeal under *State v. Geist*, 310 Or 176, 796 P2d 1193 (1990). After this case was submitted, however, we decided *T. L.*, 269 Or App at 456, in which we held that "ORS 419B.923 provides a trial-level mechanism to set aside judgments in dependency cases, and,

because that remedy is available to challenge the adequacy of dependency counsel, *Geist* is inapplicable." *Id.* Our decision in *T. L.* forecloses our consideration of mother's inadequate-assistance claim.

Affirmed.